SARTAIN, Judge.
This is an appeal in a workmen’s compensation case wherein plaintiff was awarded benefits for total permanent disability.
At the time of the accident plaintiff was employed by Billie Ray McKenzie, who was a subcontractor of Southern Tupelo Lumber Company, Inc. (Southern Tupelo), and their alleged compensation insurers, Key Life Insurance Company and Bituminous Casualty Corporation, respectively. It was ultimately determined that Key Life Insurance Company was not a compensation carrier but had issued a policy to McKenzie covering the latter’s employees to the extent of SI,000 for medical expenses and $2,000 for “loss of earnings”. The claim against Key Life Insurance Company was settled and it was stipulated that the amounts paid by this company would be credited to any liability assessed against either McKenzie, Southern Tupelo, or Bituminous Casualty Corporation.
Southern Tupelo first interposed the defense that the relation between itself and that of McKenzie was buyer-seller. It was contended that McKenzie was cutting timber which he had purchased from Den-dinger, Inc. and selling it to Southern Tupe-lo. This contention was properly rejected by the trial judge because the record fully supports the conclusion that Billie Ray McKenzie was a subcontractor of Southern Tupelo, thereby making Southern Tupelo a statutory employer of plaintiff under the provisions of L.R.S. 23:1061.
It is undisputed that plaintiff was injured while performing hazardous work and that sixty-five per cent of his weekly wages exceed $35.00 per week.
On March 31, 1965 while plaintiff was performing the work of a “log skidder” on timber lands of Dendinger, Inc. in Livingston Parish, Louisiana, a pair of tongs became disengaged from a log and struck plaintiff on the right side of his head causing a very severe injury which has been medically described as “compound depressed skull fracture, right occipital”. Plaintiff was first taken to the Seventh Ward General Hospital in Hammond and then immediately transferred to the Baton Rouge General Hospital in Baton Rouge, Louisiana. He was there seen and treated by Dr. Joseph M. Edelman, a neurosurgeon. An operation was performed and the fractured bone fragments were removed, thus leaving a portion of plaintiff’s brain unprotected by the skull. Plaintiff’s recovery from surgery was uneventful and he was discharged from the hospital on April 20, 1965. He was thereafter seen on seven occasions by Dr. Edelman. On his last examination on July 20, 1965, plaintiff complained of dizziness when he became hot, a burning sensation in the top of his head and drainage from the wound on the right side of his head. Dr. Edelman was unable to discern any evidence of drainage and at that time expressed his opinion that plaintiff could return to his former employment. The doctor was of the opinion that at a later date, not earlier than one year, it might be necessary to insert a plastic plate over the area of plaintiff’s skull where the bone had been previously removed. This operation is known as a cranioplasty. The doctor *266 also stated in his report of July 20, 1965, that plaintiff was a poor subject for rehabilitation and because of his “attitude” doubted very much if plaintiff would ever return to his former employment.
McKenzie had been paying plaintiff the sum of $50.00 per week. When Dr. Edel-man expressed the opinion that plaintiff could return to his former employment these payments ceased as of July 20, 1966.
It is the contention of the plaintiff that he could not return to the arduous work of a log skidder for both physical and mental reasons. Physically, plaintiff contended that he suffered extensively from dizziness, headaches and pressure in the area of the injury. His mental reservations concerned the fear of being struck on the head again and if the blow was to the same spot, it might prove fatal. Plaintiff alleged in his petition that his fear and apprehension to engage in similar work brought about a traumatic neurosis.
In 'April of 1966 plaintiff went to and was examined by Dr. John D. Jackson, a neurosurgeon at the Ochsner’s Foundation Hospital in New Orleans. Plaintiff complained of having dizziness since his discharge by Dr. Edelman, pain over his right side of his head and headaches. Dr. Jackson at that time was of the opinion that if plaintiff’s complaints persisted, he should undergo the cranioplasty. On November 15, 1966 plaintiff returned to Ochsner’s and a cranioplasty was performed the next day by Dr. Jackson. His recovery from the operation appeared to be routine and he was released from the hospital on November 23, 1966, and discharged by Dr. Jackson on December 6, 1966.
In the meantime, plaintiff was seen by his family physician, Dr. Ewell Charles Kemp. His first visit to Dr. Kenip was on September 7, 1966. This, of course, was before the cranioplasty. Dr. Kemp next saw plaintiff in July of 1967, after the cranioplasty, and treated him on three separate occasions, the last on September 19, 1967. These latter treatments were in accordance with recommendations made by and in consultation with Dr. Jackson. Dr. Kemp deposed that in his opinion and throughout the period of time that he saw and treated plaintiff, plaintiff was disabled from performing any heavy manual work, particularly that of a woodsman.
During the month of May, 1967, plaintiff was seen by Dr. A. Knight Lavender, a specialist in the field of psychiatry. Dr. Lavender’s testimony was also taken by deposition and he expressed the opinion that plaintiff had developed initially a traumatic neurosis and ultimately a “chronic depressive reaction”. Dr. Lavender stated that the accident on March 31, 1965 was the “triggering mechanism” which brought about the neurotic and depressive activities on the part of the plaintiff.
The testimony of Dr. Albert T. Butter-worth, Clinical Director of East Louisiana State Hospital, Jackson, Louisiana, was taken by deposition. The views expressed by Dr. Butterworth are corroborative of the opinion and diagnosis of Dr. Lavender.
Defendants in their appeal contend that the above enumerated testimony does not support the judgment of the trial court in determining that plaintiff was totally and permanently disabled within the meaning of our workmen’s compensation laws. Defendants cite the cases of Miller v. United States Fidelity and Guaranty Co., 99 So.2d 511 (2d La.App., 1958) and Elliott v. Insurance Company of North America, 159 So.2d 313 (2d La.App., 1963, writs refused, 1964) as authority for the rule that claims from traumatic neurosis under workmen’s compensation are to be closely scrutinized and the burden of proof on plaintiff made commensurately more onerous.
In the Miller case the trial judge had entered judgment adverse to the claimant. On appeal, with the late Judge Hardy as author of the opinion, the Second Circuit reversed and stated: 99 So.2d 511, 515.
“In .the instant case there can be no doubt as to the establishment of the *267 original injury by indisputable objective evidence. The question here tendered involves the sufficiency, vel non, of subjective evidence of disability which is related to the original accidental injury. In the resolution of this point it is necessary to determine the nature and character of the asserted disability which is denominated as ‘traumatic neurosis’ or ‘conversion hysteria’. These medical terms are generally synonymous and fall within that specialty of medical science which deals with mental and nervous, rather than physical, affections and disabilities. For this reason we are not disposed to give any weighty consideration to the testimony of the orthopedic specialists. The chief value of this testimony is found in the fact that it has established beyond question the original physical injury. Our task is to determine whether plaintiff’s alleged disability is real or imaginary.”
In the Elliott case the trial judge had entered judgment in favor of the claimant and there the Second Circuit reversed but specifically stated that the psychiatrist’s testimony relied upon by claimant was “guarded, vague, indefinite, and unconvincing, and, in some instances, confused or contradictory”.
In Corral v. Crawford Homes, Inc., 113 So.2d 820 (1959) this court had occasion to consider a judgment of the district court dismissing plaintiff’s claim on the grounds that the plaintiff had failed to prove a continuing residual disability by reason of a traumatic neurosis resulting from the accident. Judge Tate, as author of the opinion, determined that the trial judge was not in error in reaching a factual conclusion based upon all of the evidence in the record, lay and medical, particularly when the testifying psychiatrist saw the plaintiff only one time and then just four days prior to the trial.
The lay testimony in the case at bar stands uncontradicted to the effect that following the accident plaintiff completely withdrew into a world unto himself. He no longer worked or engaged in his favorite sports of fishing and hunting. This testimony coupled with that of Drs. Jackson, Kemp and Lavender clearly preponderate to plaintiff’s benefit and outweighs the opinion of Dr. Edelman, who stated that when he last saw plaintiff on July 20, 1966 plaintiff could and should have returned to work. In fairness to Dr. Edelman, it should be noted that he did not have an opportunity nor was he called on to reconsider his opinion in the light of subsequent events.
It is clear to us that this record fully supports the conclusion that plaintiff has surmounted the wall of “suspicion” and shouldered the more onerous burden of proof required in cases involving a traumatic neurosis. None of the cited cases involved physical injuries remotely approaching the severity of those sustained by plaintiff in the instant matter.
The trial judge denied plaintiff’s claim for statutory penalties, interest and attorney’s fees. In this determination we concur. On July 20, 1965 plaintiff was pronounced fit to return to his former employment. This was the information available to the defendants and to the plaintiff. Although subsequent events proved this conclusion in error, it does not brand the action of the defendants in refusing to pay further compensation benefits as arbitrary or capricious. See Charleston v. American Insurance Co., 136 So.2d 495 (1st La.App., 1961 writs refused, 1962) and Spencer v. Kaiser Aluminum and Chemical Corp., 152 So.2d 215 (4th La.App., writs refused, 1963).
Initially there was some dispute as to whether or not the policy issued by Key Life Insurance Company and the benefits to be paid thereunder were to be credited against any liability assessed against the remaining defendants. During argument before us it was agreed that in the event of an affirmation of the judgment appealed *268 from the defendants would be given credit for their payments. The trial judge had done just this. Therefore, this issue has been amicably resolved. The opinion rendered by the trial judge awarded plaintiff compensation in the amount of $35.00 per week, but inadvertently failed to limit the maximum number of weeks to 400 as authorized by law. This omission should be corrected and the judgment amended to provide that the $35.00 per week shall be for a period not to exceed 400 weeks.
Accordingly, for the above and foregoing reasons the judgment of the district court as amended herein is affirmed at appellants’ costs.
Amended and affirmed.