485 So.2d 589 (1986)
Governor JOHNSON
v.
DISTRIBUTION AND TRANSPORTATION COMPANY, d/b/a New Orleans Drayage Company and Commerce and Insurance Company, in Solido.
No. CA-4643.
Court of Appeal of Louisiana, Fourth Circuit.
March 12, 1986.
*590 J. Paul Demerest, New Orleans, for appellant.
Herman L. Bastian, Jr., New Orleans, for appellee.
Before GULOTTA, GARRISON and SCHOTT, JJ.
GULOTTA, Judge.
In this worker's compensation case, plaintiff appeals from a judgment ordering his employer and its insurer to pay compensation and medical expenses through a specified date, and denying plaintiff's claim for penalties, interest, and attorney fees for defendants' discontinuance of payment of benefits. We affirm.
On July 19, 1983, Governor Johnson, a truck driver for New Orleans Drayage Company, suffered soft tissue injuries to his head, neck, lower back, and legs when his truck overturned. After receiving emergency out-patient treatment, Johnson consulted a private physician and began a regimen of office visits and physical therapy from July 21, 1983 until September 13, 1984.
The compensation insurer began paying benefits on August 3, but discontinued payments on November 22, 1983, after receiving an orthopedic surgeon's report indicating that Johnson's cervical and lumbar spondylosis had pre-existed the truck accident. The insurer made additional payments to January 24, 1984, after receiving a January 5 report from a specialist in physical medicine (to whom plaintiff was *591 referred by the employer), who stated that plaintiff's continuing complaints of pain in his neck and shoulder and numbness and weakness in his left leg were not associated with "a long term disability" and that it was feasible that plaintiff could return to work "within the next several weeks" after follow-up medications and physical therapy.
The trial judge ordered payment of benefits and medical expenses through April 30, 1984, but refused plaintiff's demand for penalties and attorney fees. In oral reasons for judgment, the judge noted that the 62 year old plaintiff had an arthritic condition that may have been aggravated by the accident and that his work-related injuries had healed by the end of April, 1984. In denying penalties and attorney fees, the judge further noted that the defendant insurer had resumed compensation payments after it had realized its mistake in terminating them and it had valid, legitimate reasons based on the physician's January 5, 1984 report to discontinue payments after January 24, 1984.
Appealing, plaintiff contends that his disability has been continuous since the accident and that the trial judge therefore erred in ordering payments only through April 30, 1984. In this regard, he further argues that he is entitled to penalties and attorney's fees because the insurer erroneously discontinued benefits based on inconclusive medical reports of insurance company physicians while disregarding reports from plaintiff's treating physician and other specialists indicating that plaintiff had a continuing disability. Plaintiff also points out that the insurance company made no reasonable effort to ascertain his true medical condition by having him reexamined before terminating his benefits. He further argues the trial judge erroneously considered his age and thoughts about retirement from his job. We disagree. Medical testimony and reports, though conflicting, support the trial judge's conclusions.
The treating physician, Dr. Joseph Braud, diagnosed plaintiff's injuries from the July 19, 1983 accident as ligamentous strain and contusion of the cervical and lumbrosacral spine, a black eye, bruises and contusions of the face and scalp, and multiple bruises of the thigh and left ankle. As late as September 11, 1984, Dr. Braud stated that Johnson was unable to return to gainful employment.
Dr. John Watermeier, an orthopedic surgeon, who examined plaintiff (on referral from plaintiff's attorney) on October 9, 1984, and again on January 8, 1985, was of the opinion that Johnson had sustained aggravation to his pre-existing arthritic condition and that his prognosis was "basically fair". He considered Johnson to be disabled from his employment and unable to do heavy lifting as he had before his accident.
Dr. Gerald Francis Burns, a specialist in physical medicine, who saw plaintiff on November 15, 1984, on referral from Dr. Watermeier, was of the opinion that it was more probable than not that his pre-existing neuropathy was aggravated or made more symptomatic by the trauma of the accident.
Dr. James Thomas Williams, an orthopedic surgeon, examined Johnson on November 11,1983, on referral from the insurance company. He testified that Johnson had a preexisting condition that became more symptomatic because of the accident, and he did not advise that Johnson work in any capacity that required heavy physical labor. In his November 17, 1983, report which the insurer relied on to terminate compensation, Dr. Williams stated that Johnson's evidence of cervical and lumbar spondylosis was of "long-standing" and had pre-existed the work-related accident.
Dr. Gary Glynn, a specialist in physical medicine, indicated in a January 5, 1984 report that plaintiff's back problem was not likely related to the trauma. Dr. Glynn did not anticipate that Johnson would have a long term disability associated with his condition, however, and stated that his return to work was feasible within the next several weeks after follow up care, possibly including injections, physical therapy, and oral medication. It was on the basis of *592 this report that the insurer discontinued compensation as of January 24, 1984. In a second examination on April 17, 1984, Dr. Glynn concluded that Johnson could return to work on a trial basis with limitations as to heavy lifting.
Johnson testified that no physician had ever told him he could resume work driving a truck and lifting heavy freight, or had given him a release saying that he had finished treatment. He further testified, however, that his condition is "pretty decent", that he can drive, and that he could return to work with a small truck and a helper.
The manager of New Orleans Drayage Company testified that Johnson had made no statement about returning to work, but had never been officially terminated from the company. He further stated that Johnson had mentioned possible retirement before and after the accident, although he had made no formal application to retire.
We find no error in the trial judge's conclusions, based on the conflicting medical testimony, that plaintiff was entitled to compensation payments through April 30, 1984. In light of Dr. Glynn's testimony and report indicating that plaintiff was capable of returning to work in April, 1984, we conclude the trial judge properly found that any disability causally related to the accident had ceased and that plaintiff was no longer entitled to benefits.
We further find no error in the denial of penalties, interest, and attorney fees to plaintiff. Although LSA-R.S. 23:1201.2 provides for penalties and attorney fees where an employer has arbitrarily, capriciously, or without probable cause failed to pay compensation, an award is not justified where the refusal to pay benefits is based on a valid dispute concerning the cause of the disability. Weller v. Brown, 398 So.2d 551 (La.App. 1st Cir.1979). Similarly, penalties are not appropriate if there is a reasonable foundation for discontinuing payments, such as a genuine dispute whether the claimant has recovered from the disabling injury, even if the facts and law ultimately reveal the refusal or discontinuance was erroneous. Fazande v. New Orleans Public Service, Inc., 430 So 2d 225 (La.App.4th Cir.1983). The trial court's determination on this issue is factual and should not be reversed unless clearly wrong. Martin v. Rollins Services, Inc., 424 So.2d 429 (La.App.4th Cir.1982); Collins v. McDonald's Corp., 411 So.2d 611 (La.App.1st Cir.1982).
In the instant case, the compensation insurer first discontinued payments on November 23, 1983, based on the adjuster's interpretation of Dr. Williams's November 17, 1983, report, which stated that Johnson had no disc or nerve root problem, and that spondylosis of his vertabrae in his neck and lower back was long standing and had pre-existed the work-related accident. Dr. Glynn's January 5, 1984 report, which influenced the adjuster to discontinue payments again as of January 24, 1984, indicated that Johnson's complaints were not associated with a long term disability and that it was feasible for him to return to work within the next several weeks.
When the medical evidence, though contradictory, is considered, a reasonable conclusion can be made that plaintiff's soft tissue injuries had subsided and that Johnson's back problems, if indeed disabling, had largely predated the accident and were not accident related. Under these circumstances, we cannot say that the trial judge erred in concluding that the insurer's action in discontinuing compensation payments was not arbitrary and capricious.
Lastly, we do not feel the trial judge's comments in oral reasons regarding plaintiff's age or retirement plans played a substantial part in his decision on the merits of the case. The trial judge's findings are clearly based upon the extensive medical evidence adduced at trial. The references to plaintiff's age and retirement plans and to the employer's belief that plaintiff had retired were made, more likely than not, to demonstrate the employer's lack of bad faith in not remaining in close contact with plaintiff after the accident and in not offering him his job again. The *593 comments do not compel a different result in this case.
Accordingly, the judgment is affirmed.
AFFIRMED.