PLOTKIN, Judge,
concurring in part and dissenting in part, with written reasons:
Although I would analyze and interpret the facts differently, I concur in the majority’s decision that the plaintiff is entitled to worker’s compensation. However, I disagree with the decision concerning when the compensation should begin and with the award of penalties and attorney’s fees.
MEDICAL EVIDENCE
On November 6, 1985, plaintiff was facially injured when a truck tire exploded during the course and scope of his employment with defendant Alexander Trucking. He was taken to Charity Hospital, where he stayed for two days, until November 8. The only treatment he received was de-bridement of his wounds and splinting of his fractured little finger. His injuries included a lacerated forehead and an open fracture of the frontal sinus bone. He later returned once to Charity Hospital on November 13, 1985 for observation only.
Plaintiff’s next medical examination was performed at the request of his attorney by Dr. Gary Carroll on February 17, 1986. Dr. Carroll testified that he found nothing wrong with Burse, but referred him to a neurosurgeon because of his subjective complaints.
On May 30, 1986, plaintiff filed a claim with the State Department of Labor, and on July 15, 1986, the department recommended the payment of compensation. The defendant refused to consent to the *394 order. The record is devoid of any medical basis for a finding of disability at that point in time. The only medical evidence existing was the Charity Hospital record and Dr. Carroll’s reports, both negative in terms of disability. Therefore, the plaintiff was not entitled to receive compensation based on the evidence available at that point in time, despite the recommendation of the department. The defendant’s refusal to pay was therefore justified.
The plaintiff was later referred by his attorney to Dr. Jose Oiler, a neurosurgeon, on August 29, 1986. In a report dated January 30, 1987, Dr. Oiler opined that the plaintiff had sustained an accident-related injury, recommended further testing and found that the plaintiff was disabled from working as a long-distance truck driver. The record does not indicate that this report was ever sent to the defendant. Had the defendant received this report, it would have been put on notice concerning the plaintiff’s condition and the refusal to pay compensation would have no longer have been justified. However, since plaintiff failed to prove that the report was ever sent to the defendant, the continuing refusal to pay compensation was not improper.
Plaintiff filed suit September 12, 1986.
The next medical visit occurred October 7, 1987, when the plaintiff was examined by Dr. John F. Schumacker, a neurosurgeon, who found no neurological deficits, but recommended a neuropsychological evaluation because of the plaintiff's emotional problems and complaints. He also recommended an opthalmological examination. The final medical examination was performed on October 17,1987, by Dr. Walter Diaz, an opthalmologist, who found that plaintiff’s eyesight was normal.
EMPLOYMENT EVIDENCE
Burse testified unequivocally, when asked repeatedly, that he had not worked a single day as a long-distance 18-wheeler truck driver since the accident and that his only income since November 6, 1985 was $200 from odd jobs.
The majority incorrectly dismisses, as discreditable because the trial judge ignored it, the overwhelming and unim-peached testimony of five witnesses, coupled with surveillance films, which indisputably proved that the plaintiff had returned to work as a truck driver, prior to trial.
Defendant Don Alexander testified that the plaintiff called him and asked to be allowed to return to work two weeks after the accident, but that he refused to rehire Burse until he had been discharged by his doctor. Although the trial judge improperly restricted his testimony on this point, Alexander stated that he observed the plaintiff driving dirt-hauling trucks three weeks after the accident and regularly thereafter.
Don Darensbourg stated that he hired the plaintiff as a tractor-trailer 18-wheel dirt-hauler driver for one week in 1987, and that he had observed the plaintiff driving for other companies during the period Burse said he had not worked.
Gilbert Brown also stated that he employed the plaintiff as a truck driver in 1987 for at least two or three months to haul rocks and sand. Burse had most recently worked for Brown the Monday before trial. Brown testified that the plaintiff requested that he be paid in cash for his services in order to avoid making any record of employment which might be used against him at trial.
Frazier Tompkins, a fellow truck driver, stated at trial that he had seen Burse driving trucks some 40 to 50 times during the time Burse said he had not worked.
Dennis Alexander testified that he spoke to the plaintiff after the accident and that Burse told him he was working because he needed money. Alexander stated that he saw the plaintiff working as a tractor-trailer driver and that he saw the plaintiff washing his truck.
Finally, and conclusively, an investigator filmed Burse driving an 18-wheel tractor-trailor dirt truck from his house to the Bonne Carre spillway, where he picked up a load of dirt. The tape unambiguously shows the plaintiff working as a dirt hauler without any apparent medical disability. The films indisputably corroborate the testimony of the defendant’s witnesses.
*395 It should be noted that the plaintiff failed to describe his duties, hours of employment or job requirements in the record. Additionally, he failed to rebut any of the evidence that he prevaricated about returning to work.
Therefore, on the issue of compensation, I concur and agree with the majority that Dr. Oiler’s testimony established that the plaintiff was entitled to workers’ compensation benefits. However, those benefits should not begin until the defendant became aware of Dr. Oiler’s report, since that report was the first and only positive medical statement that the plaintiff had suffered any disability. Since the record indicates that the defendant was never sent copies of the report, I would order payments to begin when the defendant actually received the positive medical report or on the date of the judgment.
PENALTIES AND ATTORNEYS’ FEES
The relevant workers’ compensation statutes provide, in pertinent part, as follows:
LSA-R.S. 23:1201
[[Image here]]
E. If any installment of compensation payable without an order is not paid.... there shall be added to such unpaid installment a penalty of an amount equal to twelve percent thereof....
LSA-R.S. 23:1201.2
Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause shall be subject to the payment of all reasonable attorney’s fees for the prosecution and collection of such claim....
(Emphasis added.)
The jurisprudence interpreting the above provisions has established that an award of penalties and attorney fees against an employer for failure to pay benefits due is precluded when the employer has asserted a good-faith defense. Chiasson v. Lafourche Parish Council, 449 So.2d 110, 114 (La.App. 1st Cir.1984); Norred v. Traveler Ins. Co., 236 So.2d 637 (La.App.2d Cir.), writ denied 256 La. 842, 239 So.2d 354 (1970). The imposition of penalties under the above provisions is considered harsh; therefore they should not be imposed where a genuine dispute exists. Dupre v. Sterling Plate Glass & Paint Co., Inc., 344 So.2d 1060, 1065 (La.App. 1st Cir.), cert. denied 347 So.2d 246 (La.1977). In such cases, the employer’s refusal to pay is deemed to be in good faith and with just cause, but the court should nonetheless consider what information the employer used, or had available in making the decision, to determine whether the failure to pay was justified. Id. Penalties should not be imposed in doubtful cases, where a bona fide dispute as to entitlement to benefits exists. Ceasor v. Belden Corp., 536 So.2d 1261, 1267 (La.App.3d Cir.1988); Crooks v. Belden Corp., 334 So.2d 725, 727 (La.App.3d Cir.1976).
I believe that the record in the instant case indicates that a bona fide dispute as to the plaintiff’s continued entitlement to workers’ compensation benefits existed at the time the defendant discontinued the payments. In my view, the defendant presented sufficient evidence to support its belief that the plaintiff not only was able to return to work, but that in fact he had returned to work in the same type of job— driving a truck — that he held prior to the accident. Additionally, the record contains no medical basis for a finding of disability and no evidence that the plaintiff was actually disabled, except the trial testimony of Dr. Oiler. The fact that the defendant’s good faith belief later turned out to be wrong is insufficient to justify a hindsight finding that the discontinuance of the benefits was arbitrary, capricious and without probable cause, as required by the statutes. Coleman v. Crown Zellerbach Corp., 421 So.2d 300, 302 (La.App 1st Cir.1982).
Whether termination of workers’ compensation benefits is arbitrary, capricious or without probable cause depends primarily on facts known to the employer at the time of the action. Lee v. Smith, 176 So.2d 413, 418 (La.1965). In this case, the videotapes and the testimony of the defendant’s witnesses prove that, at the time of termination of the benefits, the facts known to the employer were that the plaintiff was *396 apparently able to return to work. Where information available to the employer and compensation insurers was that the injured workman was fit to return to former employment, the employer’s refusal to pay further compensation benefits is not arbitrary and capricious even though subsequent events prove that conclusion of fitness to have been in error. Johnson v. Distribution and Transportation Co., 485 So.2d 589, 592 (La.App. 4th Cir.1986); Jones v. Southern Tupelo Lumber Co., 233 So.2d 264, 267 (La.App. 1st Cir.1970); affirmed in part, reversed in part, amended, on other grounds, 244 So.2d 815 (La.1971).
For the above and foregoing reasons, I concur with the majority’s decision granting the plaintiff workers’ compensation benefits, but would not allow those benefits to begin until the defendant became aware of Dr. Oiler’s report or until the date of judgment. I also disagree with the majority’s awarding the plaintiff penalties and attorneys’ fees.