WARD, Judge.
Richard Coalgrove sued his employer, Spider Staging Sales Company for worker’s compensation, alleging that Spider failed to pay all weekly benefits and medical expenses associated with a work-related injury he sustained on April 10, 1986. The Trial Judge found Coalgrove temporarily totally disabled as a result of his injury from April 10, 1986 until July 20, 1987. The judgment ordered Spider to pay an additional year of weekly benefits, past pharmaceutical and medical expenses, and future medical expenses up to $2,000.00.
Spider manufactures, sells and leases window washing equipment. At the time he was injured, Coalgrove, an eleven year employee of Spider, was based in Harahan, Louisiana as the sales representative for the sale and lease of Spider equipment in Louisiana, Mississippi, and Alabama. In addition to traveling throughout his territory and performing on-site duties in connection with the sale or rental of equipment, Coalgrove was responsible for various office duties such as collecting open accounts, maintaining an inventory, writing reports, and supervising several employees. *657 Even though he was charged with these duties, Coalgrove was paid solely on the basis of commissions derived from his sale or lease of equipment.
On April 10, 1986, while setting up and demonstrating equipment in a building under construction in New Orleans, Coal-grove injured his back and shoulder by trying to lower a supply cord from an upper story of the building. After the accident, Coalgrove did not return to work. Spider began paying weekly benefits and medical expenses to Coalgrove. After two weeks, Coalgrove’s supervisor, Robert Dillinger, traveled to the New Orleans area to determine the extent of Coalgrove’s injury. After seeing Coalgrove at a restaurant in which Coalgrove was a part-owner, Dillinger believed that Coalgrove should have been able to return to work at Spider at least to perform his office duties. Because Coalgrove had not done so, Dillinger fired Coalgrove on April 25, 1986 for disloyalty to the company.
In the months following his injury, Coal-grove went to a number of chiropractors and physicians, complaining of shoulder and low back pain. According to Coal-grove, he was referred to each doctor by the previous doctor he had seen. He began to see his eventual treating physician, Dr. Edna Doyle, in April 1987 after Dr. J. Ralph Millet referred him to her. Dr. Doyle treated Coalgrove for what she diagnosed as sacroilia dysfunction, and she prescribed medications, footwear and physical therapy. She determined that he was capable of gainful employment as of July, 1987.
Meanwhile, Spider and its insurer sent Coalgrove to Dr. Gordon Nutik in September 1986 and August 1987. Dr. Nutik took x-rays on both visits and observed a narrowing of disc space in the first X-rays depicting Coalgrove’s lower back which Dr. Nutik determined in the second visit was attributable to a flaw in the X-rays. Dr. Nutik believed that Coalgrove was capable of gainful employment as of August 1986.
The Trial Judge, following Dr. Doyle’s opinion, determined that Spider owed weekly benefits from the time the benefits were discontinued in July, 1986 until July, 1987, the date his treating physician said he could return to work. Presumably, Spider’s insurer had discontinued benefits because of Dillinger’s report on Coalgrove’s activities.
After his injury, Spider’s insurer reimbursed or paid for all medical expenses through February 1987. Expenses of $3,233.00 for doctor bills and $256.00 for pharmacy bills were unreimbursed.
On appeal, Spider assigns error to the Trial Judge’s finding that Coalgrove was temporarily totally disabled until July 20, 1987. La.R.S. 23:1221 provides:
Compensation shall be paid under this Chapter in accordance with the following schedule of payments:
(1) Temporary total. For injury producing temporary total disability of an employee to engage in any self-employment or gainful occupation for wages whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured ...
Spider argues that Dillinger’s testimony regarding his observation of Coalgrove at the restaurant proves that Coalgrove was capable of self-employment. Dillinger’s testimony, we believe, merely showed that Coal-grove, while recuperating from his injury, was able to do inconsequential light work at the restaurant he owned. On the other hand, his employment with Spider, among other things, required extensive travel.
Dr. Doyle’s testimony, describing the extent and duration of Coalgrove’s injury, established Coalgrove’s disability and proved that Coalgrove was, as a result of his injury, unable to work in any occupation until July, 1987. An employee who can only perform work in pain is entitled to a temporary total disability award. Green v. Jackson Rapid Delivery Service, 506 So.2d 1345 (La.App. 2nd Cir.1987). Dr. Doyle indicated that Coalgrove reported much pain and that this would interfere with his concentration in any employment. She believed that he would experience pain when he drove long distances or even sat at a desk. Moreover, Coalgrove’s refusal to accept Dillinger’s proposal that he perform *658 only his office duties at Spider while recuperating from his injury is understandable because Coalgrove's salary was based entirely on commissions which were earned by traveling and supervising installation of equipment sold.
The Trial Judge was clearly within his discretion in choosing Dr. Doyle’s return to work date instead of Dr. Nutik’s. Both physicians were credible and neither physician possessed qualifications clearly superior to the other. Both were specialists and board certified—one in physical medicine and rehabilitation and the other in orthopedics. In addition, the Trial Court may assess more weight to the testimony of a plaintiff’s treating physician over the testimony of the insurer’s physician who, in this case, saw Coalgrove only for two short visits. Sckouest v. J. Ray McDermott & Co., Inc., 411 So.2d 1042 (La.1982).
Spider also argues that the Trial Court erred by not presuming that all of the doctors who examined Coalgrove did not testify because their testimony would have been unfavorable to Coalgrove. Indeed, Coalgrove did subpoena several of the doctors whom he had seen, but some of the doctors refused to obey the subpoenas. Moreover, if any of the doctors had released Coalgrove to return to work before Dr. Nutik did, which is the presumption Spider would have applied in this case, then Spider’s attorney could have discovered this, subpoenaed the doctors, and elicited the earlier return to work dates at trial. On balance, the usefulness of this presumption in this case is clearly outweighed by the convincing testimony from Dr. Doyle upon which the Trial Judge relied.
Spider also argues that the Trial Judge erred by ordering it to reimburse Coalgrove for past medical expenses he paid. Spider’s contention, however, that Coalgrove may only be reimbursed for payments made to doctors who testified at trial, has no merit. Dr. Doyle’s testimony, particularly her knowledge of prior medical treatment given to Coalgrove and her assessment of the connection between the injury and all subsequent medical care, as well as the parties’ stipulation as to the amount Coalgrove paid but was not reimbursed, sufficiently proves that all medical expenses incurred were for necessary treatment and, therefore, reimburseable by Spider and its insurer. We amend the judgment, however, to award reimbursement in the stipulated amount of those medical expenses incurred from July 17, 1986 to the date of trial, December 11, 1987, instead of until July 20, 1987, the date Dr. Doyle released Coalgrove for work.
Coalgrove has also appealed, and he assigns error to the Trial Judge’s failure to award travel expenses which he allegedly incurred for necessary medical treatment. La.R.S. 23:1203(C) provides:
... the employer shall be liable for the actual expenses reasonably and necessarily incurred by the employee for mileage reasonably and necessarily traveled by the employee in order to obtain the services, medicines, and prosthetic devices which the employer is required to furnish under this Section....
Because Dr. Doyle’s testimony established that Coalgrove’s continuing treatment at her office was necessary, Coalgrove is entitled to reimbursement for the travel expenses he incurred or will incur to obtain future medical treatment at Dr. Doyle’s office. Thus, the judgment of the Trial Court is amended to include an award to Coalgrove of $130.00 for toll fares and $780.00 for mileage expenses for sixty-five round trips of sixty miles each.
We also agree with Coalgrove’s request for legal interest and amend the judgment to include an award of interest on unpaid weekly benefits from the due date of each weekly installment until paid. Bordelon v. Vulcan Materials Co., 472 So.2d 5 (La.1985). Coalgrove, however, is not entitled to legal interest on the portion of the judgment awarding reimbursement for medical expenses, because there is no evidence in the record that Spider or its insurer was ever presented with and refused payment of those particular bills. See, Sharbono v. H & S Construction Co., 478 So.2d 779 (La.App. 3rd Cir.1985).
*659 Coalgrove complains that the Trial Judge failed to assess penalties and attorney fees against Spider’s insurer under La.R.S. 22:658. Whether a refusal to pay benefits is arbitrary, capricious or without probable cause is a question of fact which will not be disturbed absent manifest error. Henson v. Handee Corp., 421 So.2d 1134 (La.App. 2nd Cir.1982). The Trial Judge found that Coalgrove had not presented all of the bills to Spider for payment and, considering the testimony presented at trial, there was a genuine dispute over Coalgrove’s employment capability. Therefore, the Trial Judge did not commit manifest error by refusing to assess penalties and attorney fees.
Coalgrove assigns error to the Trial Judge’s decision to limit the amount of future medical expenses for which Spider would be responsible. Coalgrove asserts that under La.R.S. 23:1203 Spider must provide all necessary medical treatment to him without limit. The Trial Judge, we believe, was correct to rely on Dr. Doyle’s own assessment of the monetary limit that Coalgrove’s future medical treatment would not exceed. Therefore, the limit placed on Spider’s responsibility for Coal-grove’s future medical expenses is affirmed.
Accordingly, the judgment of the Trial Court is affirmed and amended in part. All costs of this appeal are assessed to Spider.
AMENDED IN PART; AFFIRMED.