537 So.2d 1176 (1988)
Jerome AMBROSE
v.
FLUOR CONSTRUCTORS, INC. and Hartford Insurance Company.
No. CA 8648.
Court of Appeal of Louisiana, Fourth Circuit.
October 27, 1988.
On Rehearing December 13, 1988.
Judgment amended in part on Rehearing January 25, 1989.
*1177 Frank A. Bruno, Bruno and Bruno, New Orleans, for plaintiff.
Michael S. Guillory, Richard B. Ehret, Eve Masinter, McGlinchey, Stafford, Mintz, Cellini & Lang, New Orleans, for defendants.
Before BARRY, ARMSTRONG and PLOTKIN, JJ.
ARMSTRONG, Judge.
Defendants, Fluor Constructors, Inc. ("Fluor"), and Hartford Insurance Company ("Hartford"), appeal from a trial court judgment awarding plaintiff, Jerome Ambrose, workers compensation benefits.
In January, 1984 plaintiff sustained an injury while in the course and scope of his employment with Fluor. He was paid compensation benefits from that date until August 13, 1984 when they were discontinued by defendants. Shortly thereafter plaintiff filed a claim with the Louisiana Department of Labor, Office of Worker's Compensation ("OWC"). The OWC issued a recommendation which plaintiff rejected. In November, 1984 plaintiff filed suit in district court. It appears that sometime in June, 1985, before trial, defendants resumed payment of benefits to plaintiff. The trial later that month was apparently limited to plaintiff's entitlement to the interim benefits from the date of discontinuance, August 13, 1984, until their resumption in June, 1985. The trial court rendered judgment in favor of plaintiff for past compensation benefits, medical expenses, attorney fees, and a penalty. This judgment was satisfied by defendants.
Ten months later, on April 12, 1988, defendants again discontinued payment of benefits to plaintiff, based allegedly on a physician's opinion that he could return to restricted work. Plaintiff disputed the termination of benefits and filed a motion to set the matter for trial in district court. Apparently, he intended to try his original claim for benefits as set forth in his original petition. Defendants filed an exception of prematurity alleging that plaintiff's claim had to first be submitted to the OWC. The trial court agreed and sustained the exception. Plaintiff subsequently filed a claim with the OWC, but the OWC replied that because it had previously issued a recommendation which was rejected by one of the parties, it no longer had jurisdiction over the matter.
After the OWC action plaintiff returned to the district court which set a date for trial. Defendants then filed a petition for a writ of mandamus asking the court to compel the OWC to perform its statutorily mandated duty under La.R.S. 23:1331(C) and consider plaintiff's claim for a modification of the trial court judgment. The trial court denied defendant's motion and heard trial on the merits. Judgment was rendered in favor of plaintiff ordering defendants to pay him supplementary earnings benefits.
Plaintiff, a welder and pipe fitter, injured his right knee when he fell from a scaffold. The accident occurred in January, 1984 and plaintiff was initially treated by Dr. Neil Maki, an orthopedist, in February, 1984. An examination at that time revealed a contusion to the right knee with a possible injury to the medial menicus, or inner cartilage, of the knee. Dr. Maki restricted him to light work with no climbing of ladders or stairs, or repetitive bending or running. Because plaintiff continued to complain of pain and a "locking" sensation in his knee, Dr. Maki performed an arthogram which revealed torn cartilage in the knee. He also saw evidence of chondromalacia, or generally unhealthy cartilage. Arthoscopic surgery was performed and Dr. Maki excised the torn cartilage and shaved the cartilage on the undersurface of the kneecap. As of July, 1984 Dr. Maki assigned a ten percent disability rating to plaintiff.
In June, 1985 plaintiff underwent arthoscopic surgery a second time, performed by Dr. Charles Billings. Dr. Billings removed some torn cartilage and noted the presence of significant chondromalacia changes. As of July, 1985 Dr. Billings assigned a ten to fifteen percent permanent partial disability as to his right knee. As of April, 1987, the *1178 time of trial in the case at bar, Dr. Billings felt that the plaintiff was at a medical plateau and that his condition would not improve. The disability rating remained the same. He stated that plaintiff's subjective complaints were always similar, and that based upon these and objective findings he believed plaintiff's work restrictions should be permanent. These restrictions included no running, jumping, repetitive stair and ladder climbing, kneeling, or crawling. In other words, plaintiff could not return to work as a welder or pipe fitter.
At the request of defendant, Hartford, Dr. J. Kenneth Saer examined plaintiff after his first operation in 1984. At that time he felt that the plaintiff was not ready to return to work as a pipe fitter. Dr. Saer examined plaintiff a second time in August, 1986, following the operation by Dr. Billings. Dr. Saer found crepitus in plaintiff's knee, as had Dr. Billings. Crepitus is a grinding feeling or sound that can be heard or felt as the knee is put through a motion. Dr. Saer felt that plaintiff could return to work as a pipe fitter with no restrictions or limitations. He saw nothing to prevent plaintiff from climbing scaffolding or carrying heavy weights. His opinion directly contradicted that of Dr. Billings.
Plaintiff was forty years old at the time of trial in June, 1987. He testified that his knee caused him pain and that he took medication to alleviate it. If he walks too far or sits or stands for too long he has problems. If he kneels he must grab onto something to pull himself up.
Defendants discontinued paying plaintiff compensation benefits in April, 1986. A year later, in April, 1987, defendants had plaintiff interviewed by a vocational rehabilitation expert, Larry Stokes. Mr. Stokes stated that the plaintiff had no specialized training but had learned his trade of welding while on the job. His other job experience included painting and sandblasting. Mr. Stokes said that based upon the reports of Dr. Saer plaintiff could return to work as a welder. Based upon Dr. Billings' report he felt that the plaintiff could engage in work with those restrictions previously discussed. Based upon his evaluations of plaintiff Mr. Stokes felt that he could do mechanical and repair-type jobs such as repairing electric motors, welding equipment, hand tools, etc. He also mentioned that plaintiff could work as a film developer or do service-type jobs. He contacted a number of prospective employers and spoke with them about plaintiff's qualifications and physicial limitations. He reported a number of possible jobs such as a film developer starting at $3.50 per hour, a potato chip quality control inspector starting at $4.00 per hour, and an electric motor repairer starting at $5.00 per hour with no experience. Also mentioned were several jobs as a cabdriver. Several jobs as a crane operator were mentioned but in reality plaintiff had no experience operating these types of cranes. The majority of the jobs started at an hourly wage of five dollars or less.
It was stipulated by all parties that plaintiff had been earning $16.80 per hour at the time of his injury, that based upon a fortyhour work week his average weekly wage was $672.00, and that compensation benefits had been paid through April 12, 1986.
Based upon this evidence the trial court found that plaintiff was entitled to supplementary earnings benefits from April 12, 1986 into the future for a period not to exceed five hundred and twenty-five weeks. Under La.R.S. 23:1221(3) the benefits were to be based on the difference between $672.00, the average weekly wage, and as determined by the trial court, the minimum wage rate per hour multiplied by a fortyhour work week. The trial court refused to accept the rehabilitation expert's testimony as competent for the purpose of proving available work to the plaintiff under La.R.S. 23:1221(3)(c)(i). The court felt that the burden of proof required that an employee actually be sent out on the job; it was not enough for a rehabilitation counselor to simply appear in court and testify in the abstract that certain jobs were located that would fit the physical limitations indicated by the various medical reports.
On appeal defendants raise four assignments of error. Defendants first contend *1179 that the trial court did not have jurisdiction to try this matter and that the court should have granted its petition for a writ of mandamus ordering the OWC to consider the plaintiff's claim. Defendants base their argument on the grounds that plaintiff's claim was either a wholly new one or it was a request for a modification of the trial court's previous judgment.
We do not consider plaintiff's claim for future benefits a wholly new claim. In 1984 when defendants discontinued payment of benefits the first time, plaintiff submitted his claim for compensation benefits to the OWC for informal resolution. This claim apparently was for benefits from the date of discontinuance forward into the future. The OWC issued its recommendation which was rejected by plaintiff. The jurisdiction of the OWC ended when plaintiff rejected its recommendation. Plaintiff filed a petition with the district court setting forth the same claim presented to the OWC. The only reason that plaintiff's claim for future benefits was not heard by the trial court was because less than a week before trial defendants resumed payment of compensation benefits. Thus, only the question of his entitlement to interim benefits was at issue at trial. The judgment was limited to interim benefits. Plaintiff did not compromise, settle, or abandon his claim for future benefits. We take the view that the trial of that issue was simply held in abeyance. When, less than a year later, defendants discontinued benefits, plaintiff decided to simply go ahead and try the issue of future benefits. His physical condition, for all practical purposes, remained unchanged from August, 1984 to June, 1987, when trial in the case at bar was heard. In July, 1984 Dr. Maki assigned a ten percent disability rating; in June, 1985, and at trial in June, 1987, Dr. Billings assigned a ten to fifteen percent disability rating. Plaintiff's 1987 claim was the same as his 1984 claim. It was not a wholly new claim.
Defendants cite La.R.S. 23:1331(C) which states:
C. At any time after six months after rendition of a judgment of compensation by the district court or at any time after six months from the date of the acceptance by the parties of the recommendation of the director under R.S. 23:1310.1, the director shall review the same upon the application of either party for a modification thereof and shall issue a recommendation pursuant to R.S. 23:1310.1.
It is argued that the district court rendered "a judgment of compensation" and plaintiff sought to modify it after the April, 1986 discontinuance of benefits. We disagree for the same reasons set forth above. The judgment referred to only addressed the issue of interim benefitsnot future benefits. We feel the OWC properly refused to consider plaintiff's claim again in 1986. In 1984 the OWC issued a recommendation on the entitlement to future benefits as well as any interim benefits accruing between August 14, 1984 and the date of its recommendation. There was no reason for the OWC to reconsider the identical claim regarding future benefits when the district court had failed to consider or rule on it.
For these reasons, we feel that, under the facts and circumstances of this case, the trial court properly considered plaintiff's claim for future benefits.
Defendants next contend that the trial court erred in finding that plaintiff could not return to his former job as a pipe fitter. They rely on the testimony of Dr. Saer who felt that plaintiff could return to work as a pipe fitter. Dr. Saer examined plaintiff on only two occasions, apparently for litigation purposes. He never treated the plaintiff. Dr. Billings was one of plaintiff's treating physicians. The testimony and medical opinion of a treating physician is given greater weight than that of a physician seen for litigation purposes. Sino v. Chalmette General Hospital, Inc., 489 So.2d 311 (La.App. 4th Cir.1986). Based upon Dr. Billing's report, and the restrictions he imposed on plaintiff's work activities, Mr. Stokes, the vocational rehabilitation expert, testified that plaintiff could not return to work as a pipe fitter. The record evidence furnishes a sufficient basis for the finding by the trial court that *1180 plaintiff is unable to return to work as a pipe fitter. Such a finding is not clearly wrong. See Canter v. Koehring, 283 So.2d 716 (La.1973); Arceneaux v. Dominque, 365 So.2d 1330 (La.1978).
Defendants claim that the trial court erred in finding that they had not provided rehabilitation services as contemplated by La.R.S. 23:1226. La.R.S. 23:1226 states in pertinent part:
A. When an employee has suffered an injury covered by this Chapter which precludes the employee from earning wages equal to wages earned prior to the injury, the employee shall be entitled to prompt rehabilitation services. The employer or insurer shall provide such injured employee with appropriate training and education for suitable gainful employment and may utilize programs provided by state and federal agencies for vocational education when conveniently available or may utilize any public or private agency cooperating with such state and federal agencies in the vocational rehabilitation of such injured employee. In the absence of such programs the employer or insurer shall provide vocational rehabilitation with available private agencies.
B. For the purposes of this Section only, "suitable gainful employment" means employment or self-employment, after rehabilitation, which is reasonably attainable and which offers an opportunity to restore the individual as soon as practical and nearly as possible to his average earnings at the time of the injury.
Plaintiff suffered an injury precluding him from earning wages equal to the wages he earned prior to the injury $16.80 per hour. Defendants did not provide plaintiff with any training or education whatsoever. Six weeks before trial, one year after discontinuing benefits for the second time, defendants obtained the services of a rehabilitation counselor who tested plaintiff, reviewed his medical records, and contacted prospective employees about jobs plaintiff could do. As previously mentioned, the majority of these positions started at $5.00 per hour or less. Based upon this evidence, we find no error in the trial court's conclusion that defendants failed to discharge their obligation under the statute. The trial court properly ordered defendants to provide rehabilitation services to the plaintiff.
Lastly, defendants claim that the trial court erred in finding the testimony of Dr. Stokes incompetent for the purposes of proving available work to plaintiff under La.R.S. 23:1221(3)(c)(i). La.R.S. 23:1221(3)(c)(i) states:
(c)(i) Notwithstanding the provisions of Subparagraph (b) of this Paragraph, for purposes of Subparagraph (a) of this Paragraph, if the employee is not engaged in any employment or self-employment, as described in Subparagraph (b) of his Paragraph, or is earning wages less that the employee is able to earn, the amount determined to be the wages the employee is able to earn in any month shall in no case be less than the sum the employee would have earned in any employment or self-employment, as described in Subparagraph (b) of this Paragraph, which he was physically able to perform, and (1) which he was offered or tendered by the employer or any other employer, or (2) which is proven available to the employee in the employee's or employer's community or reasonable geographic region. (Emphasis added)
Supplemental earnings benefits are the measure of a certain percentage of the difference between the average monthly wages at the time of injury and the average monthly wages the employee is able to earn in any employment or self-employment. Defendants apparently contend that the plaintiff "is able to earn" whatever one of the jobs presented by Dr. Stokes pays, or in any case more than the minimum wage, the figure used by the trial court. The trial court felt that the burden of proof required by this provision required "that an employee actually be sent out on the job rather than a rehabilitation counselor coming to court and testifying in the abstract that certain jobs were located that would *1181 fit the physical limitations indicated by the various medical reports."
We disagree with the trial court's interpretation of the statute. This court has previously held that an employer may meet his burden of proving that there are jobs available to the employee as contemplated by La.R.S. 23:1221(3)(c)(i) by showing that jobs are generally available within the range of the employee's capacity. Kreider v. Schulin's Appliance Service, 524 So.2d 153 (La.App. 4th Cir.1988); Batiste v. Hopeman Brothers, Inc., 508 So.2d 922 (La.App. 4th Cir.1987), writ denied, 512 So. 2d 1178 (La.1987).
In Batiste a vocational rehabilitation expert evaluated the claimant, taking into account his physical limitations, education and training, and prior work experience. The expert also administered an academic evaluation and career assessment inventory. He concluded that the claimant would be suited for "desk work", jobs paying in the $4.50 to $6.00 per hour range. However, the expert was unable to point to a particular employer who could accept the claimant's application. He could only state that there were jobs in the market which the claimant was capable of performing. We found that defendants carried their burden of proving that there were jobs available to the claimant as stated in La. R.S. 23:1221(3)(c)(i). We further found that it was not necessary to conduct a job market survey to show that jobs were open for the claimant's application.
In the case at bar Mr. Stokes fully evaluated the plaintiff as the expert in Batiste did. But Mr. Stokes went even further, contacting prospective employers to find out if they had openings available for a person with the plaintiff's skills, education, and physical limitations. Plaintiff was a resident of Vacherie, Louisiana. Some of the available jobs were in Houma, New Orleans, Reserve, Gramercy, Donaldsonville, and Baton Rouge. Based upon this evidence we feel the defendants met their burden of proving that employment was available to plaintiff in his community or reasonable geographic region as set forth in La.R.S. 23:1221(3)(c)(i).
In Batiste, supra, the expert reported that the available jobs payed from $4.50 to $6.00 per hour. We chose the lowest figure, $4.50 per hour, to calculate the statutory percentage of the difference between what the claimant was able to earn and what he had been earning at the time of his injury. In the case at bar the lowest hourly rate for a job proven available was $3.50 per hour. We will use this figure instead of the minimum wage figure used by the trial court.
For the reasons assigned we affirm in part the judgment of the trial court, amend it in part, and recast it to read as follows:
IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that there be judgment herein in favor of plaintiff, JEROME AMBROSE, and against the defendants, FLUOR CONSTRUCTORS, INC., and HARTFORD INSURANCE COMPANY, jointly, severally, and in solido for supplemental earnings benefits in the amount of THREE HUNDRED FIFTY-FOUR DOLLARS and 68/100 ($354.68) per week from April 12, 1986, forward and into the future for a period not to exceed five hundred twenty-five weeks.
IT IS FURTHER ORDERED, that the herein named defendants be cast in solido for all costs at both the trial and appellate court levels, including an expert witness fee for Dr. Charles Billings in the amount of $300.00.
IT IS FURTHER ORDERED that consistent with this opinion, the herein named defendants provide rehabilitation services to the plaintiff as required by La.R.S. 23:1226.
AFFIRMED IN PART, AMENDED IN PART, AND AS AMENDED, RECAST.
We granted defendants' application for rehearing to consider two errors brought to our attention regarding this and the trial court's calculation of compensation benefits. We originally found plaintiff entitled to supplemental earnings benefits in the amount of $354.68 for a period not to exceed five hundred twenty five weeks. This was incorrect in two respects and we now remedy the errors.
*1182 At the time of plaintiff's injury in January, 1984, La.R.S. 23:1221(3)(a) provided that supplemental earnings benefits be calculated as seventy-four percent of the difference between ninety percent of plaintiff's average monthly wages at the time of injury and the average monthly wages the plaintiff is deemed to be able to earn in any month. The average monthly wages are to be computed as four and three-tenths times the weekly wages as defined in La.R.S. 23:1021(10).
Plaintiff's average monthly wage at the time of injury was $2,889.60. Ninety percent of this figure is $2,600.64. The average monthly wage he was deemed able to earn after his injury was $602.00 based upon an hourly wage of $3.50 and a forty-hour week multiplied by four and three-tenths. The difference between these two figures is $1998.64. Seventy-four percent of the difference is $1478.99, which reduced to weekly benefits is $343.95 per week. However, La.R.S. 23:1202 provides, for injuries occurring on or after July 1, 1983, that "the maximum weekly compensation to be paid under this chapter shall be seventy-five percent of the average weekly wage paid in all employment subject to the Louisiana Employment Security Law ..." At the time of plaintiff's accident this average weekly wage was $326.26. Seventy-five percent of $326.26 is $244.70. Plaintiff is entitled to supplemental earnings benefits in the amount of $244.70 per week.
In its application for a rehearing defendants assert for the first time their right to a week for week credit for the number of weeks it has already paid compensation benefits to plaintiff as against its total exposure for 520 weeks of benefits. Neither the trial court's reasons nor its judgment addressed the issue of such a credit and defendants did not originally raise the issue on appeal. However, pursuant to La.C.C.P. art. 2164 we will consider the defendants' right to a credit.[1]
Defendant paid compensation benefits to plaintiff for a total of one hundred sixteen weeks from January 16, 1984 to April 12, 1986. This includes those benefits paid as the result of the trial court's original judgment concerning interim benefits. Under La.R.S. 23:1221(3) plaintiff is entitled to a maximum of five hundred twenty weeks of supplemental earnings benefits. In accordance with Jacks v. Banister Pipelines America, 418 So.2d 524 (La.1982) and Lemoine v. Brice Building Company, Inc., 465 So.2d 57 (La.App. 4th Cir.1985), writ denied, 468 So.2d 1212 (La.1985), the defendant is entitled to a week for week credit for those weeks it paid plaintiff disability benefits. Therefore, we will award defendants a credit of one hundred sixteen weeks against its total liability of five hundred twenty weeks.
For the reasons assigned we affirm in part the judgment of the trial court, amend it in part, and recast it to read as follows:
IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that there be judgment herein in favor of plaintiff, JEROME AMBROSE, and against the defendants, FLUOR CONSTRUCTORS, INC. and HARTFORD INSURANCE COMPANY, awarding plaintiff supplemental earnings benefits in the amount of TWO HUNDRED FORTY-FOUR DOLLARS and SEVENTY CENTS ($244.70) per week from April 12, 1986 forward and into the future for a period not to exceed four hundred four (404) weeks.
IT IS FURTHER ORDERED that the herein named defendants be cast in solido for all costs at both the trial and appellate court levels, including an expert witness fee for Dr. Charles Billings in the amount of $300.00.
IT IS FURTHER ORDERED that, consistent with the views expressed in our original opinion, the herein named defendants provide rehabilitation services to the plaintiff as required by La.R.S. 23:1226.
*1183 AFFIRMED IN PART, AMENDED IN PART, AND AS AMENDED, RECAST.
ON APPLICATION FOR REHEARING PER CURIAM.
Upon request by both parties we amend our judgment on rehearing to award plaintiff, Jerome Ambrose, worker's compensation benefits in the amount of $245.00 per week instead of the $244.70 originally awarded. In all other respects our judgment on rehearing remains the same.
NOTES
[1] La.C.C.P. art. 2164 provides:

"The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. The court may award damages for frivolous appeal; and may tax the costs of the lower or appellate court, or any part thereof, against any party to the suit, as in its judgment may be considered equitable."