KLIEBERT, Chief Judge.
Plaintiff, Todd LeBlanc, suffered an on-the-job knee injury on December 21, 1988 and sued his statutory employer, Modern Flooring, Inc., and its insurer, the Louisiana Insurance Guaranty Association *1242 (LIGA),[1] defendants herein, for worker’s compensation benefits of 66%% of his weekly wage and, alternatively, for supplemental earnings benefits due to his decreased earnings capacity. Plaintiff also sought penalties and attorney’s fees from defendants alleging they were arbitrary and capricious in failing to pay his compensation benefits and medical expenses. From a judgment in favor of plaintiff awarding him past due supplemental earnings benefits of $2,781.71, finding his average monthly wage at the time of the accident was $1,105.44, and denying penalties and attorney’s fees, plaintiff appeals.
For the following reasons, we reverse in part, affirm in part and remand.
While installing carpet for Modern Flooring, Inc. on December 21, 1988, plaintiff LeBlanc twisted his left knee and suffered a posterior horn tear of the medial meniscus. Dr. Robert Mímeles, plaintiff’s treating orthopedic surgeon, surgically repaired the torn ligament and fully released plaintiff for return to work on April 3, 1989. The only restriction placed on plaintiff was that he not use a knee kicker.[2] Dr. Mí-meles assigned a 13% permanent partial disability rating to plaintiff’s knee.
Based on Dr. Mímeles’ reports, LIGA terminated scheduled compensation benefits under LSA-R.S. 23:1221. Because of continued complaints of knee pain and swelling, however, LIGA continued to pay medical benefits for a number of medical examinations plaintiff obtained after April of 1989.
Shortly before trial plaintiff was evaluated by Dr. Rudolph Hamsa, an orthopedic surgeon, for continued knee problems in February 1990. An MRI was ordered which was essentially negative. Dr. Ham-sa felt plaintiff’s knee problem should fully resolve with therapy and, after therapy, his only restriction would be not to use a knee kicker. However, at the last examination, Dr. Hamsa also restricted plaintiff to no squatting, no use of the knee kicker, and to avoid physical stresses of the knee. Defendants have paid all medical bills related to Dr. Hamsa’s examinations.
On appeal, plaintiff argues the trial court erred in (1) calculating his pre-accident wage, (2) concluding he could earn more than minimum wage because there was no proof of any specific jobs available to him, and (3) dismissing his claim for penalties and attorney’s fees.
The trial court found plaintiff was entitled to Supplemental Earnings Benefits (SEB) because he was not able to earn wages equal to 90% or more of his wages at the time of injury and awarded him benefits of 66⅜% of the difference between the average monthly wage at the time of injury and the average monthly wage the employee was able to earn in any month thereafter. LSA-R.S. 23:1221(3)(a).[3] However, the record is unclear as to how the trial court calculated plaintiff’s wages. It appears the trial court found plaintiff was employed on a “... unit, piecework, commission, or other basis ...” and utilized LSA-R.S. 23:1021(10)(d)[4] in computing his *1243 wages and determining plaintiff’s average monthly wage was $1,105.44. This figure was derived by using plaintiffs job tickets from July 1988 through December 1988 of $6,368.00. When plaintiff worked during this twenty-two week period, he averaged 4.5 days per week or 99 total days for an average monthly wage of $1,105.44. No deductions were made for expenses incurred by plaintiff.
Plaintiff would contract with Modern Flooring to install carpet purchased by a customer from Modern Flooring. He was paid by the job and would hire and pay his own helpers; he owned his two trucks; except on special jobs, all materials, except carpet, were purchased by plaintiff and he owned the tools needed to perform the work. Worker’s compensation insurance premiums for plaintiff and his helpers were deducted by Modern Flooring, Inc. from the contract job price. Modern Flooring, Inc. did not supervise plaintiff’s work. Thus, plaintiff is an independent contractor engaged in manual labor and under the provisions of LSA-R.S. 23:1021(6)[5] is covered by the worker’s compensation act.
Where an injured party is an independent contractor engaged in manual labor of the same kind as that done by his employees, then his profits and overhead cannot be included as part of “wages” in calculating his weekly rate of compensation benefits. The proper method to determine the wages of an independent contractor is to determine the prevailing wage for work similar in character performed by a similarly experienced worker. Courts, should not use the job contract price or the wages of an independent contractor’s employees to determine the independent contractor’s average wage. Jim Walter Homes v. Lewis, 544 So.2d 485 (2nd Cir.1989). Because the record before us does not contain sufficient evidence to determine the proper wage rate of a carpet installer with similar experience as plaintiff, we remand the matter to the district court with instructions to determine plaintiff’s weekly wage rate in a manner consistent with this opinion.
Additionally, in determining the SEB benefits due plaintiff, we note plaintiff testified he had no steady employment at the time of trial and was able to work only at odd jobs. He inquired about employment in the carpet installation field but was not offered a job due to his knee injury. According to LSA-R.S. 23:1221(3)(c)(i), if the employee is not engaged in any employment or self-employment, the amount determined to be the wages the employee is able to earn in any month shall not be less than the sum he would have earned in any employment or self-employment which he was physically able to perform and which is proven available to the employee in the employee’s or the employer’s community or reasonable geographic region. An employer may meet this burden by proving that there are jobs available to the employee as contemplated by LSA-R.S. 23:1221(3)(c)(i)[6] by showing *1244 that jobs are generally available within the range of the employee’s capacity. Ambrose v. Fluor Constructors, Inc., 537 So.2d 1176 (4th Cir.1988); Batiste v. Hopeman Bros., Inc., 508 So.2d 922 (4th Cir.1987) writ denied 512 So.2d 1178 (La.1987).
Myrna B. Bacuetes and Susan E. Ells-worth, the vocational rehabilitation counselors admitted as experts in their field on behalf of defendants, did a labor market survey utilizing plaintiff’s education, experience and limitations as set forth by Doctors Mimeles and Hamsa. They found numerous jobs available to plaintiff and approved by Dr. Mímeles to be work plaintiff could perform, at a pay rate of at least minimum wage.
However, because we are unable to determine plaintiff’s average weekly wage we are unable to determine whether the plaintiff is entitled to SEB benefits. Thus, this question is also remanded to the trial court.
Plaintiff also requests penalties and attorney’s fees be assessed against defendants for terminating benefits and failure to pay medical expenses. Under 23:1201.2, where an employer is arbitrary and capricious in terminating compensation benefits, he is liable for all reasonable attorney’s fees for the prosecution of the claim. Whether the discontinuance of payments is without reasonable foundation and therefore arbitrary and capricious is a question of fact. Kreider v. Schulin’s Appliance Service, 524 So.2d 153 (4th Cir. 1988).
We find no manifest error in the trial court decision denying penalties, and attorney’s fees. Defendants paid compensation benefits to plaintiff through Dr. Mí-meles’ release to full employment with the only restriction that plaintiff could not use a knee kicker. LIGA investigated and determined carpet installation could be performed without the use of a knee kicker and submitted possible alternative employment to Dr. Mimeles for approval as to physical limitations. Most alternative employment was approved by Dr. Mimeles. Thus, we agree with the trial court that defendants were not arbitrary and capricious in terminating benefits.
With regard to medical bills, defendants paid all submitted medical bills, including all doctor visits after Dr. Mimeles released plaintiff to return to work. There was one bill that was possibly not paid as per the adjuster’s request but this was due to an oversight. Thus, the trial court properly found no penalties and attorney’s fees were to be assessed defendants.
For the foregoing reasons, we set aside the trial court’s determination of plaintiff’s average monthly wage and award supplemental earnings benefits and affirm the denial of penalties and attorney’s fees. The case is remanded to the trial court for a proper determination of plaintiff’s average wage in accordance with this opinion.
SET ASIDE IN PART; AFFIRMED IN PART; AND REMANDED.

. Modern Flooring, Inc.’s insurer, Anglo-American Insurance Company, became insolvent after this injury and the Louisiana Insurance Guaranty Association took over their claims.

. A knee kicker is a tool used to stretch and secure carpet during installation.

. LSA-R.S. 23:1221(3)(a) provides:
(3) Supplemental earnings benefits.
(a) For injury resulting in the employee’s inability to earn wages equal to ninety per cent or more of wages at time of injury, supplemental earnings benefits equal to sixty-six and two-thirds percent of the difference between the average monthly wages at time of injury and average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter in any employment or self-employment, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of the injury was particularly fitted by reason of education, training, and experience, such comparison to be made on a monthly basis. Average monthly wages shall be computed as four and three-tenths times the wages as defined in R.S. 23:1021(10).
Amended by Acts 1985, No. 926, § 1, eff. Jan. 1, 1986.

.LSA-R.S. 23:1021(10)(d) provides:
(d) Other wages. If the employee is employed on a unit, piecework, commission, or other basis, his gross earnings from the employer for the twenty-six week period immedi *1243 ately preceding the accident divided by the number of days the employee actually worked for the employer during said twenty-six week period and multiplied by four; however, if such an employee has worked for the employer for less than a twenty-six week period immediately preceding the accident, his gross earnings from the employer for the period immediately preceding the accident divided by the number of days the employee actually worked for the employer during said period and multiplied by four.
Amended by Acts 1968, Ex.Sess., No. 25, § 1; Acts 1975, No. 583, § 1, eff. Sept. 1, 1975; Acts 1983, 1st Ex.Sess., No. 1, § 1, eff. July 1, 1983.

. LSA-R.S. 23:1021(6) provides:
(6) “Independent contractor” means any person who renders service, other than manual labor, for a specified recompense for a specified result either as a unit or as a whole, under the control of his principal as to results of his work only, and not as to the means by which such result is accomplished, and are expressly excluded from the provisions of this Chapter unless a substantial part of the work-time of an independent contractor is spent in manual labor by him in carrying out the terms of the contract, in which case the independent contractor is expressly covered by the provisions of this Chapter.

. LSA-R.S. 23:1221(3)(c)(i) provides:
(c)(i) Notwithstanding the provisions of Subparagraph (b) of this Paragraph, for purposes of Subparagraph (a) of this Paragraph, if the employee is not engaged in any employment or self-employment, as described in Sub-paragraph (b) of this Paragraph, or is earning *1244 wages less than the employee is able to earn, the amount determined to be the wages the employee is able to earn in any month shall in no case be less than the sum the employee would have earned in any employment or self-employment, as described in Subpara-graph (b) of this Paragraph, which he was physically able to perform, and (1) which he was offered or tendered by the employer or any other employer, or (2) which is proven available to the employee in the employee’s or employer’s community or reasonable geographic region.