614 So.2d 350 (1993)
Charles FERRAND
v.
D.H.L. COMPANY and Insurance Company of North America.
No. 92-CA-1758.
Court of Appeal of Louisiana, Fourth Circuit.
February 11, 1993.
*351 Ammon L. Miller, Jr., New Orleans, for plaintiff/appellee.
Denis Paul Juge, Frank R. Whiteley, III, Sutherland, Juge, Horack & Dwyer, New Orleans, for defendants/appellants.
Before SCHOTT, C.J., and BARRY and PLOTKIN, JJ.
BARRY, Judge.
On July 26, 1989 Charles Ferrand, who was employed by D.H.L. Company (DHL), injured his knee and Insurance Company of North America (CIGNA) paid temporary total disability benefits of $227.61 per week until February 2, 1991. CIGNA then reduced Ferrand's payments to supplemental earnings benefits (SEB) of $107.50 per week which were terminated on October 30, 1991. Ferrand's suit resulted in a judgment for $227.21 per week temporary total benefits plus interest minus compensation paid.
DHL and CIGNA submit four assignments of error:
(1) Ferrand is not temporarily totally disabled;
(2) Ferrand was a part-time employee;
(3) DHL and CIGNA are entitled to a credit for overpayment of compensation benefits;
(4) Ferrand has an earning capacity in excess of pre-accident wages.
Ferrand testified that he graduated from high school in 1975 and attended Southern University for three years where he majored in political science. He left college, got married, then worked as an agent for an insurance company and at West Jefferson Hospital as a psychiatric technician. His work at the hospital was to document the behavior patterns of patients and provide written reports to the physicians.
Ferrand worked for DHL as a courier guard for approximately six years and earned $9.75 per hour. He stated that he was hired as a part-time employee but eventually worked full-time. He said that in January 1989 (before his accident) DHL started scheduling couriers to less than 40 hours per week, and he admitted that he worked 96.5 hours during the month preceding his accident.
Ferrand testified that work is available which he is capable of performing. He stated that he could "possibly" work eight hours a day in a sitting position.
Ferrand said that his treating physician, Dr. Murphy, released him to light duty employment in early 1991 and recommended that he seek a job as a dispatcher. Ferrand stated that DHL did not offer him a dispatcher's job. He applied (unsuccessfully) for at least ten jobs after knee surgery and claims he was not hired because of the injury and the compensation claim.
*352 Dr. Murphy, an orthopedic surgeon, stated that he reported to CIGNA on July 31, 1990 that Ferrand could return to light duty as a dispatcher. The doctor testified that Ferrand was employable at the time of the deposition, but would never fully recover and his condition may deteriorate. Dr. Murphy reiterated that Ferrand was capable of sedentary to light duty employment and is best suited for a desk job that requires no climbing, lifting heavy objects or standing for long periods of time.
Joseph Schoenbachler, a manager for DHL, testified that Ferrand was hired as a part-time employee but also worked full-time. In January 1989 DHL's policy changed and couriers were only scheduled to work part-time. DHL classified Ferrand as a regular part-time employee. Schoenbachler confirmed that during the month before the accident Ferrand worked 96.5 hours at $9.75 per hour. He asked a vocational specialist for Ferrand to work as a dispatcher but Ferrand could not be contacted. He said that position was no longer available.
Becky Riecke, a rehabilitation specialist hired by CIGNA, testified that in March 1990 she located two dispatcher jobs and one telephone sales job which paid between $3.80 and $6.00 per hour. That information was forwarded to Ferrand by certified mail but he did not reply.
In August 1991 Riecke performed another labor market survey which identified seven positions available within Ferrand's capabilities. Those jobs paid between $4.92 and $8.00 per hour. A third job survey in October 1991 identified five employment opportunities paying between $4.25 and $6.00 per hour.
Riecke testified that an analysis of each position was submitted to Dr. Murphy and he approved 11 of the 15 jobs and needed additional information on the other positions.
Riecke explained to prospective employers that Ferrand had an on-the-job knee injury and physical restrictions. She told potential employers that Ferrand was receiving compensation, but had been released to perform light duty employment.

ANALYSIS

A. Temporary Total Disability

La.R.S. 23:1221(1) establishes when "temporary total" disability benefits are payable and states in part:
(1) Temporary total.
(a) For any injury producing temporary total disability of an employee to engage in any self-employment or occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured, and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, or experience, sixty-six and two-thirds percent of wages during the period of such disability.
* * * * * *
(c) For purposes of Subparagraph (1)(a) of this Paragraph, whenever the employee is not engaged in any employment or self-employment as described in Subparagraph (1)(b) of this Paragraph, compensation for temporary total disability shall be awarded only if the employee proves by clear and convincing evidence unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in pain, notwithstanding the location or availability of any such employment or self-employment. (Emphasis added).
To receive temporary total disability benefits a claimant must prove his inability to engage in any gainful occupation, whether or not it is the same type of work in which the employee was engaged at the time of injury. Sharpless v. Jo Ellen Smith Medical Center, 557 So.2d 287, 288 (La.App. 4th Cir.1990), writ denied 558 So.2d 606 (La.1990); McClendon v. Schwegmann Giant Supermarkets, 561 *353 So.2d 959, 960 (La.App. 4th Cir.1990). Although compensation cases are liberally construed in favor of an employee, the burden of proof is by a preponderance of the evidence and with the same legal certainty as in any civil case. Sharpless, 557 So.2d at 288.
Ferrand did not introduce evidence that his injury prevented him from engaging in any employment. In fact he conceded that he could possibly do some work. Dr. Murphy stated as early as July 1990 that Ferrand could handle light duty employment.
Ferrand cites Coalgrove v. Spider Staging Sales Company, 530 So.2d 655, 657 (La.App. 4th Cir.1988) for the proposition that "[a]n employee who can only work in pain is entitled to a temporary total disability award." However, in Coalgrove the treating physician testified that the plaintiff was unable to work in any type of employment. Ferrand's physician testified that he was capable of light duty employment.
Factual findings as to disability and length thereof are entitled to great weight and should not be disturbed absent manifest error. Bailey v. Zurich American Insurance Company, 503 So.2d 611, 614 (La.App. 4th Cir.1987). We find that the hearing examiner was manifestly erroneous in his determination that Ferrand was entitled to temporary total disability benefits. The uncontroverted evidence proves that Ferrand could perform light employment and his educational and employment background indicates that he is well-suited for light employment.

B. Part-Time Employment

DHL and CIGNA claim that the hearing officer incorrectly determined that Ferrand was a full-time employee rather than a part-time employee.
La.R.S. 23:1021(9) defines a part-time employee as:
[A]n employee who as a condition of his hiring knowingly accepts employment that (a) customarily provides for less than forty hours per week, and (b) that is classified by the employer as a part-time position.
Ferrand and Schoenbachler stated that Ferrand originally applied for a part-time position and was hired part-time. During Ferrand's six years with DHL he worked full-time for approximately two years. However, in January 1989, six months before his injury, Ferrand's position was re-classified as part-time. Ferrand admitted that he accepted employment of less than 40 hours per week.
Schoenbachler stated that company records, including Ferrand's application for employment and an employee profile, show that Ferrand was a "regular part-time" employee.
Based on the uncontroverted evidence, it is clear that the hearing officer's classification of Ferrand as a full-time employee was erroneous.[1]
DeHart v. Betty Breaux Personnel, Inc., 535 So.2d 456, 460 (La.App. 4th Cir. 1988) held that where an employee knowingly accepts employment that customarily provides for less than 40 hours per week, the employee's average weekly wage should be calculated based on La.R.S. 23:1021(9) and 1021(10)(a)(iii).
Ferrand and Schoenbachler stated that in the four full weeks preceding the injury Ferrand worked 96.5 hours at $9.75 per hour. Thus, his average weekly wage is $235.22. The correct rate for temporary total disability benefits is $156.65 per week.

C. Overpayment

DHL and CIGNA contend that under La. R.S. 23:1206 they are due a credit for overpayment of benefits. La.R.S. 23:1206 states:
Any voluntary payment or unearned wages paid by the employer or insurer either in money or otherwise, to the employee, *354 which were not due and payable when made, may be deducted from the payments to be made as compensation.
"This statute contemplates overpayment of compensation benefits." Libasci v. Longo, 594 So.2d 1097, 1101 (La.App. 4th Cir.1992), writ denied 597 So.2d 1032 (La. 1992). La.R.S. 23:1206 applies even if the overpayment is due to the employer's error in calculating benefits. Breaux v. Petro Drive, Inc., 534 So.2d 48, 49 (La.App. 3rd Cir.1988).
The proper rate of compensation for temporary total disability benefits is $156.65. Ferrand was paid $227.61 per week from July 26, 1989 until February 2, 1991, thus was overpaid $70.96 per week for 79 weeks. DHL and CIGNA are entitled to a credit of $5,605.84 against future benefits.
DHL and CIGNA properly contend that they are also due a credit for overpayment of supplemental earnings benefits. Ferrand was paid SEB from February 2, 1991 through October 30, 1991 in the amount of $107.50 per week. That figure was based on Ferrand's classification as a full-time employee.
From November through March 1990 Becky Riecke located three jobs that were approved by Ferrand's treating physician. The jobs paid between $3.80 and $6.00 per hour. We adopt the use of the lowest hourly rate to calculate SEB. See Ambrose v. Fluor Constructors, Inc., 537 So.2d 1176, 1181 (La.App. 4th Cir.1988).
Ferrand has an earning capacity of $152.00 per week, or $653.60 per month. Ferrand's pre-injury average monthly wage was $1,011.45 ($235.22 × 4.3). Ninety-percent of $1,011.45 is $910.30. Ferrand was unable to earn at least 90% of his pre-accident wages and is entitled to SEB. The difference between $1,011.45 and $653.60 is $357.85. Sixty-six and two-thirds of $357.85 is $236.18. The proper rate of SEB was $54.92 per week ($236.18 per month).
DHL and CIGNA overpaid SEB of $52.58 per week for the 39-week period from February 2, 1991 through October 30, 1991. DHL and CIGNA are entitled to an additional credit in the amount of $2,050.62.
The total credit against future compensation is $7,656.46.

D. Future SEB

DHL and CIGNA argue that they were entitled to discontinue SEB payments in October, 1991 because three of the jobs found by Becky Riecke provided an earning capacity in excess of Ferrand's pre-accident average weekly wage. We disagree. When calculating SEB we use the lowest hourly rate of the available jobs. See Ambrose, 537 So.2d at 1181. Thus, $3.80 per hour is proper. Ferrand is entitled to SEB from October 30, 1991, the date SEB payments were discontinued, in the amount of $236.18 per month. Ferrand's rights to these payments shall not exceed 520 weeks. La.R.S. 23:1221(3)(d).
DHL and CIGNA are entitled to suspend future payments until the overpaid compensation of $7,656.46 has been recouped. Breaux, 534 So.2d at 49.

JUDGMENT
The judgment is reversed.
Ferrand is entitled to SEB in the amount of $236.18 per month from October 30, 1991, not to exceed 520 weeks starting February 2, 1991.
DHL and CIGNA are entitled to a credit of $7,656.46 for overpayment of compensation and are entitled to suspend SEB compensation until that credit is recouped.
REVERSED.
NOTES
[1] The hearing officer stated that compensation for temporary total disability in the amount of $227.21 per week was correct and ordered that amount to be paid from February 2, 1991 as long as Ferrand is disabled. The compensation actually paid was $227.61 per week. Had Ferrand been a full-time employee working 40 hours per week at a rate of $9.75 per hour, the correct weekly benefit for temporary total disability would have been $259.74.