524 So.2d 153 (1988)
Walter E. KREIDER, Jr.
v.
SCHULIN'S APPLIANCE SERVICE, INC. and State Farm Fire and Casualty Company.
No. CA-8649.
Court of Appeal of Louisiana, Fourth Circuit.
April 12, 1988.
*154 Sutherland & Judge, Denis Paul Judge, Theresa C. Leyva, New Orleans, for defendants-appellants.
Gregory W. Roniger, Jefferson, for plaintiff-appellee.
Before BYRNES, CIACCIO and PLOTKIN, JJ.
BYRNES, Judge.
By this appeal, Schulin Appliance Service, Inc. (Schulin) and State Farm Fire and Casualty Company (State Farm) assert that the trial court erred in awarding workers compensation benefits and attorneys fees to Walter Krieder, Jr. Kreider answered the appeal requesting an increase in the previous award of attorneys fees as well as damages for frivolous appeal. We affirm the judgment below and deny Kreider's request for an increase in the award.

FACTS
On March 7, 1986, Kreider injured his back and knees while working in the course and scope of employment as an air conditioner mechanic for Schulin. Kreider immediately reported the injury to his employer, but continued working after the incident until he could no longer take the pain and sought treatment on April 29, 1986, from Dr. Kitziger, an orthopedic surgeon. Dr. Kitziger diagnosed Kreider as having sustained a soft tissue strain superimposed on a pre-existing but asymptomatic arthitic condition in his spine and knees. As a result of these injuries and Kreider's complaints of pain to his back and knees, Dr. Kitziger prescribed conservative treatment and placed Kreider on "no work status". During the next year, Kreider returned for treatment over fifteen times. His condition improved only slightly and on the date of trial, Dr. Kitziger testified that "... he could perform level service activities requiring short distance walking. Definitely no long standing or long sitting. I don't think he could get in awkward positions to do work, whether its even light work".
State Farm paid all of Kreider's medical expenses through the date of trial. Kreider received worker's compensation totalling $200.00 per week (based on $7.50/hour, $300.00/week wage) from shortly after the accident through August 17, 1986.
On August 4, 1986, State Farm sent Kreider to a rehabilitation expert, Mrs. Murrell, to assess and evaluate his vocational skills. At the time of the interview, Murrell only had access to the medical report of Dr. Nutik, an orthopedist retained by State Farm who had examined Kreider on one occasion. Murrell testified that this report contained "... a general statement from Dr. Nutik that he, I think he said probably, ... indicated light duty". Murrell also included in her report a list of jobs generally available in the area which she concluded Kreider could perform. When asked why she had not placed Kreider in contact with prospective employers, Murrell responded that initially State Farm had not instructed her to provide job placement service to Kreider at that time. On August 17, 1986 after the receipt of Murrell's report, State Farm discontinued compensation payments. This suit was subsequently filed.
*155 At trial Dr. Kitziger testified as to the extent of Kreider's injuries and his inability to return to his former work. Asked when he concluded that Kreider could engage in light or moderate work, Dr. Kitziger replied, "... by the latter part of May [1986] or at the latest sometime in June if there was some real light work for him to do". Dr. Gorman, a rehabilitation expert, also testified on behalf of Kreider. Based on his evaluation of Kreider, and a medical report submitted by Dr. Kitziger, Dr. Gorman opined that, "[w]e can search for work with questionable success, or, at this point in time, he can be counseled to apply for Social Security disability benefits". The probability of Kreider locating available employment was expressed by Dr. Gorman as follows: "[b]y combination of economic conditions and reported conditions, probably two and a half chances in ten for successful and longitudinal success". Dr. Gorman further stated that if Kreider were successful in finding a job it would most likely pay between $3.35 and $4.00/hour and be part-time at 25 hours a week.
Kreider testified that prior to the accident he had no problems with his back or knees. Since the accident he has experienced pain from his back all the way down into his knees and legs. When asked what kind of activity he could no longer do, Kreider responded, no "strenuous activity at all", and, "walking any distance, sitting down any distance". Kreider also stated that when he contacted State Farm to ask why his benefits were terminated, he was told that State Farm had been informed that he had arthritis.
Joseph Dune, claims superintendent with State Farm, testified that State Farm discontinued compensation benefits because Dr. Nutik's report of July, 1986 and Dr. Kitziger's report of August, 1986 stated that Kreider could perform light duty work. Dune denied that State Farm had terminated benefits due to notice that Kreider had pre-existing arthritis. However, during cross-examination of Dune, a letter from Murrell (State Farm's rehabilitation expert) to State Farm was introduced into evidence. This letter stated, "[u]pon completion of this report Mr.
Kreider's worker's compensation benefits have been terminated due to the fact that medical information was received in your office which indicated that Mr. Kreider's disability is related to a pre-existing arthritic condition". Dune further admitted that Murrell was not hired to assist Kreider in finding a job.
Murrell later testified that shortly before trial she was asked by State Farm to conduct a job search for Kreider. As a result of this search several jobs were located ranging from parking lot cashier to shuttle bus driver. Pay ranged from $3.50/hour to $5.40/hour. The latter being only a part-time job. Murrell notified counsel for Kreider of these positions by phone and also by letter dated May 12, 1987. Trial took place on May 21, 1987 and the case was taken under advisement. On June 4, 1987, the trial court rendered the following judgment.
IT IS HEREBY ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of Walter E. Kreider, Jr. and against Schulin's Appliance Service, Inc. and State Farm Fire and Casualty Company, jointly, severally and in solido as follows: compensation benefits from August 17, 1986, through May 21, 1987, at the rate of $200.00 per week with legal interest from the date each payment was due; supplemental earnings benefits from May 21, 1987 forward (based upon the stipulated rate at the time of injury of $7.50 per hour and $300.00 per week) less any earnings that Walter Kreider, Jr., actually earns in any week thereafter or is able to earn; rehabilitation services to be provided by Dr. Neal Gorman which shall include assistance in locating an actual job; and attorney fees in the sum of $5,000.00 for the arbitrary and capricious termination of compensation benefits on August 17, 1986, the failure to tender supplemental earning benefits and the failure to provide prompt rehabilitation services; and for all costs of these proceedings.
This appeal followed.

ASSIGNMENTS OF ERROR
By their first assignment of error, Schulin and State Farm assert that the trial *156 court erred in finding that compensation benefits should be paid from August 17, 1986, through May 21, 1987, at the rate of $200.00/week. We disagree. When a claimant is unable to earn 90% or more of his wages he received at the time of his injury, he is entitled to supplemental earnings benefits equal to sixty-six and two-thirds percent of the difference between the average monthly wages at time of injury and average monthly wages earned or average monthly wages the claimant is able to earn in any month thereafter in any employment. R.S. 23:1221(3)(a). Paragraph (3)(c)(i) of R.S. 23:1221 further provides that:
Notwithstanding the provisions of Subparagraph (b) of this Paragraph for purposes of Subparagraph (a) of this Paragraph if the employee is not engaged in any employment or self-employment, as described in Subparagraph (b) of this Paragraph or is earning wages less than the employee is able to earn, the amount determined to be the wages the employee is able to earn in any month shall in no case be less than the sum the employee would have earned in any employment or self-employment as described in Subparagraph (b) of this Paragraph, which he was physically able to perform, and (1) which he was offered or tendered by the employer or any other employer, or (2) which is proven available to the employee in the employee's or employer's community or reasonable geographic region.
Kreider testified at trial that he was not employed and had not been employed since the accident. Therefore, in calculating the amount of supplemental benefits to which Kreider is entitled, we must determine what amount of wages, if any, Kreider was able to earn in any month from employment which he was physically able to perform and which he was offered by his employer or another employer or which was proven available to the employee in the community. R.S. 23:1221(3)(c)(i).
In the present case, defendant's rehabilitation expert, Murrell, testified that there were jobs generally available in the area which Kreider was able to perform. However, this evidence, was rebutted by the expert testimony of Dr. Gorman who stated that due to economic and other conditions, there was only a two and one-half chance in ten that Kreider would find employment. Additionally, both experts agreed that Kreider should be counseled to obtain Social Security disability benefits in lieu of searching for employment. Under these circumstances, we conclude the trial court did not err in finding that Schulin and State Farm failed to prove that employment was available to Kreider.
We are mindful that this court in Batiste v. Hopeman Brothers, Inc., 508 So.2d 922, (La.App.4th Cir.1987) held that an employer may carry his burden of proving that there are jobs available to the employee as stated in R.S. 23:1221(3)(c)(i) by showing that jobs are generally available within the range of the employee's capacity. However, in this case, Dr. Gorman's testimony that Kreider had only a two and one-half chance in ten of securing employment demonstrated that employment was not reasonably available to him. To hold otherwise would unfairly deprive injured workers of needed benefits based on a "long shot" at substitute employment. This flies in the face of the policy behind our scheme of worker's compensation. Given the facts of this case, we agree with the trial court that Kreider was unable to earn any wages. R.S. 23:1221(3)(a).
Under his pre-injury weekly wage of $300.00, Kreider was entitled to supplemental earnings benefits totalling $200.00 per week, the amount awarded by the trial court.
This assignment of error is without merit.
By their second assignment of error, Schulin and State Farm contend that the trial court erred in ruling that rehabilitation services should be provided by Dr. Gorman. We disagree. Rehabilitation of injured employees is provided by R.S. 23:1226 which states in pertinent part that:
A. When an employee has suffered an injury covered by this Chapter which precludes the employee from earning wages equal to wages earned prior to the injury, *157 the employee shall be entitled to prompt rehabilitation services. The employer or insurer shall provide such injured employee with appropriate training and education for suitable gainful employment and may utilize any public or private agency cooperating with such state and federal agencies in the vocational rehabilitation of such injured employee. In the absence of such programs the employer or insurer shall provide vocational rehabilitation with available private agencies.
B. For the purposes of this Section only, "suitable gainful employment" means employment or self employment, after rehabilitation, which is reasonably attainable and which offers an opportunity to restore the individual as soon as practical and nearly as possible to his average earnings at the time of the injury.
These provisions expressly provide that it is the employer's duty to supply the employee with "prompt rehabilitation services" and that this rehabilitation prepare the employee for employment which is "reasonably attainable" and which offers an opportunity to restore the employee "as soon as practical" to his pre-injury wages. From the record, it is apparent that Schulin and State Farm failed to perform this duty. Firstly, State Farm did not attempt to provide rehabilitation services until August 9, 1986five months after Kreider was injured. Secondly, it is apparent that the defendants employed their rehabilitation expert, Ms. Muller, not to prepare Kreider for employment which he could reasonably expect to attain, but to justify terminating compensation benefits to him. This is clear from State Farm's instructions to Mullen that she only conduct a job market survey and not assist Kreider in actually locating a job. Where an employer fails to provide statutorily mandated rehabilitation services, we conclude that it is within the trial court's discretion to order that employer to pay for rehabilitation services performed by an expert designated by the trial court.
This assignment of error is without merit.
By their last assignment of error, Schulin and State Farm assert the trial court erred in awarding attorneys fees. We disagree. Under R.S. 23:1201.2, an employer is liable for payment of all reasonable attorneys fees for the prosecution and collection of claims arising out of the arbitrary and capricious termination of compensation payments by the employer or insurer. Whether the discontinuance of payments is arbitrary or capricious is a question of fact. Fazande v. New Orleans Public Service, 430 So.2d 225 (La.App.4th Cir.1983). To assess penalties under R.S. 23:1201.2, it must be found that the termination of benefits by the employer or insurer was without reasonable foundation. Id. at 229.
In the present case, the State Farm claims superintendent, Dune, testified that benefits were terminated on August 17, 1986, because the medical reports of Drs. Nutik and Kitziger concluded that Kreider was capable of performing light duty. However, a letter from State Farm's rehabilitation expert, Murrell, to State Farm contradicted this testimony and stated that State Farm was discontinuing benefits because it had determined that Kreider suffered from pre-existing arthritis. In resolving this factual conflict the trial court obviously placed more weight on the letter from Murrell then on the testimony of Dune. We cannot say that this was manifest error and will not disturb the factual conclusion that benefits were terminated due to reports of pre-existing arthritis. As to the question of whether the termination was reasonable, the court stated in its reasons for judgment:
It is clear from the testimony that had State Farm contacted Dr. Kitziger it would have learned that degenerative arthritis was present prior to the accident but that it was not symptomatic until after the accident. Therefore, the court concludes that State Farm was arbitrary and capricious in terminating compensation benefits.
Having carefully reviewed the record we cannot say that this finding was unsupported *158 by the evidence or was an abuse of discretion.
This assignment of error is without merit.

CROSS-APPEAL
By his first argument, Kreider asks that we increase the award of attorneys fees to include fees for his representation at the appellate level. Although we have concluded that the trial court did not err by awarding $5,000.00 in attorneys fees for representation at the trial level due to arbitrary and capricious termination of compensation benefits, we find that the legal issues presented on appeal are not so groundless to justify an increase in attorneys fees under R.S. 23:1201.2.
We therefore deny the request for increase in attorneys fees.
Secondly, Kreider asks that we award damages for frivolous appeal. For reasons cited above, this request is also denied.
Judgment of the trial court is affirmed. Cost of this appeal are to be assessed to Schulin and State Farm.
AFFIRMED.