SCHOTT, Chief Judge.
In this worker’s compensation case the trial court found that plaintiff was entitled to benefits for temporary total disability and that defendants, Raymond International, the employer and its insurer, were arbitrary and capricious in terminating benefits. The court awarded penalties and attorney fees. Both sides have appealed, defendants contending plaintiff is not disabled and, in any event, they were not arbitrary and capricious in terminating benefits; and plaintiff claiming he is permanently disabled and entitled to an increase in attorney fees. The principal issue is whether the trial court committed manifest error in finding that defendants were arbitrary and capricious.
Plaintiff was injured on June 23, 1986. At seventy-one years of age he was working for Raymond, a pile driving contractor. He suffered burns on his left ankle after his boot had gotten filled with cement. Raymond sent him to Ochsner Clinic where he was placed under the care of Dr. Velma L. Campbell in the Department of Occupational Medicine.
Between June and August, 1986, Dr. Campbell treated plaintiff for cement burns and cellulitis and on August 25 she reported to Raymond that he had apparently developed an infection, he was on antibiotics, and he was not fit for work.
However, one of Dr. Campbell’s associates, Dr. Joseph F. Maybey, saw plaintiff on September 2, 1986 and thought he could return to work using a protective dressing and support for his ankle. He noted that plaintiff was unwilling to return to work and related plaintiff’s reluctance to the fact there was no work available for him to return to.
Dr. Campbell continued to treat plaintiff and had extensive diagnostic studies made on November 6. She reported that he was *948 free of pain from the burns but he complained of pain in the area of the ankle, swelling from walking, and aching in the leg at night. X-ray studies revealed spurs in the ankle which pre-existed the injury and apparently were causing no problems before he was burned. She attributed his other complaints to neuralgia and disuse of the foot, she prescribed physical therapy, and she thought he was still disabled. When plaintiff came for a visit on December 22 he reported continuing pain in the ankle and said the pain caused him to fall down the previous week and injure his right toe and knee. She prescribed heat applications and elevation of the right leg, thought he was still not fit for work, and recommended a consultation with Dr. Kish-ner of Ochsner’s Physical Medicine and Rehabilitation Department to determine how to rehabilitate plaintiff.
In February, 1987 Dr. Campbell reported that plaintiff was still complaining of severe burning pain in the leg which kept him awake at night and caused him to limp and fall down. By this time he had been seen by Dr. Kishner who diagnosed reflex sympathetic dystrophy (RSD) as the cause of his pain and recommended nerve blocks. RSD is an overreaction of the sympathetic nervous system to an injury. Dr. Campbell recommended an EMG and continued physical therapy and characterized plaintiff as not fit for duty.
In March 1987, Dr. Campbell reported that the EMG study on plaintiff was abnormal and that he was treated with nerve blocks which gave him temporary relief from pain. She also reported that Dr. Strube in Ochsner’s Department of Neurology diagnosed RSD in plaintiff and prescribed medication for this condition. In April she found that plaintiff had responded to the medication for his RSD but now had low back pain as the one remaining problem. She thought this had developed during the course of immobility resulting from the leg injury and from the positioning of the leg during the nerve blocks. He was put on physical therapy and provided with a lumbosacral corset and cane. As of April 30, 1987 she thought he was still not fit for duty.
At this point defendants referred plaintiff to Dr. Harold Stokes, an orthopedist, for evaluation. Plaintiff complained of leg and low back pain. On examination Stokes found no objective signs or symptoms and he thought plaintiff’s subjective complaints of pain were inconsistent and unrelated to the tests. He concluded that plaintiff's only problems were diminished circulation and degenerative changes consistent with his age and opined that if plaintiff was able to do his job prior to his injury of June, 1986, he could resume that job.
Dr. Campbell examined plaintiff in June and found him to be improving as a result of the medication for his RSD, the physical therapy and the corset but she thought he was still in pain and unfit for duty. However she reported in early August that he had a recurrence of the neurogenic pain from the RSD after developing a rash from the medication. A CT scan of the back showed extensive degenerative changes and spondylolisthesis. In this report Dr. Campbell stated that she would soon assign “a maximum medical improvement” to plaintiff and that it was unlikely that he would ever be able to return to his job. Following an examination on August 26, Dr. Campbell reported on September 2, 1987 that plaintiff had approached the maximum medical benefit, he was permanently restricted from full time work in the future, and he would continue to require physical therapy, medications, and the corset.
At this point, defendants again referred plaintiff to Dr. Stokes. Once again his examination did not disclose objective symptoms to match plaintiff’s subjective complaints of pain. In his September 21, 1987 report to the adjuster Stokes stated that he had been provided with copies of the records from Ochsner. He concluded his report as follows:
It is my opinion that this patient does not have a sympathetic reflex dystrophy. He does have diminished circulation in both lower extremities consistent with a seventy-one year old male. I am still of the opinion that if this patient was able *949 to do laboring work, pouring concrete prior to June, 1986, there are no findings at this time which would preclude his returning to that work. Certainly, the patient does have degenerative disease of the lumbar spine. I do not appreciate how that could have been aggravated by his filling his boot with concrete at work. Also, he complains of pain in his left lower extremity, which he attributes to “concrete burns”. There are no findings consistent with that at this time.
On the basis of the last report from Dr. Stokes defendants discontinued compensation benefits on October 21, 1987.
Dr. Campbell saw plaintiff for the last time on November 20 and found no change in his condition from his previous visit to her office. In January and February, 1988 Dr. Kishner of Ochsner had taken charge of plaintiffs case and concluded after consultation with Ochsner’s Department of Vascular Surgery that plaintiff should have a lumbar sympathectomy, a cutting of the nerves along the backbone in the lumbar area.
On February 19, 1988 at the request of defendants, plaintiff was evaluated by Dr. George Murphy, an orthopedist, selected by the Commissioner of Worker’s Compensation of the state Department of Labor. All of his tests were essentially negative for objective symptoms. He concluded his report with:
It is the opinion of this examiner that, at present time, there is no evidence that the patient has any continued reflex sympathetic dystrophy in the leg. I do not see how having some cement in his boot and some problems around his left ankle have caused any problems with his lower back. The gentleman is 71 years old and the back condition seems to be related strictly to physiologic aging and degeneration in that region and unrelated to his work accident. The numbness in his leg is consistent with his peripheral neuropa-thy. He does not appear to require any further treatment from the original injury.
The trial judge’s reasons for judgment relate only to his conclusion that defendants were arbitrary and capricious for failing to investigate whether surgery was necessary for plaintiff. He refers to Dr. Kishner’s letter of February 8, 1988 and states that defendants’ adjuster believed on her own that the surgery was for a back condition unrelated to the cement burn. As discussed, these reasons are contradicted by the record and readily demonstrate that the trial court’s conclusion of arbitrariness and capriciousness on defendants’ part was manifestly erroneous — clearly wrong.
Before addressing this central issue of the case, however, we will first dispose of plaintiff’s and defendants’ contentions that the trial court erred in finding plaintiff entitled to benefits for temporary total disability. The testimony at trial is summarized above. There was first a conflict on the extent of pain plaintiff was experiencing. Next, given some pain, there was a conflict as to whether this resulted from the accident or was a natural result of plaintiff’s age, almost seventy-four years at trial time. This conflict of opinion was among some outstanding, highly regarded medical experts. The trial court resolved it in favor of Drs. Campbell and Kishner and against Drs. Stokes and Murphy. It would be inappropriate for an appellate court to disturb such a resolution by the trial court.
Plaintiff’s contention that the trial court erred in finding him to be temporarily and not permanently disabled as a result of his accident is likewise without merit. At some point in time plaintiff’s age was going to render him disabled from laborious work even without the accident. When this time comes his disability from the accident will cease and he will become disabled because of age. In this sense his accident produced disability is temporary. Defendants are not obliged to pay benefits for the rest of plaintiff’s life, only until, in some future review, they can show that he is no longer disabled as a result of the injury on the job.
Returning to the question of penalties and attorney’s fees, the record does not support the trial court’s finding that *950 defendants discontinued benefits on their own and without an investigation. On the contrary, they did so only after referring plaintiff to Dr. Stokes the second time for evaluation and after being told unequivocally that he disagreed with the Ochsner assessments and that plaintiff had returned to his pre-accident condition. Similarly, the trial court’s reliance on Dr. Kish-ner’s February 8, 1988, letter to support the conclusion that this should have provoked further investigation by defendants ignores the fact that defendants did investigate further by sending plaintiff to Dr. Murphy, who was selected by a neutral third party at the Labor Department. Like Dr. Stokes, Murphy unequivocally dismissed Kishner’s diagnosis and told defendants that plaintiff was not disabled from the accident.
Plaintiff relies upon Lupo v. State Div. of Admin., 531 So.2d 1116 (La.App. 4th Cir.1988) and Kreider v. Schulin’s Appliance Service, 524 So.2d 153 (La.App. 4th Cir.1988), but both of these cases are distinguishable. In Lupo the claims agent discontinued compensation benefits on the basis of an excerpt from the testimony by a physician in the plaintiffs previous tort trial. Because the physician’s testimony taken as a whole indicated that plaintiff was severely disabled and because defendant made no effort to obtain a current medical report from the physician before terminating benefits the trial court did not err in finding arbitrariness and capriciousness. In Kreider the claims superintendent testified that he terminated benefits because reports from two physicians showed plaintiff was capable of light duty, but this testimony was impeached by evidence that the insurer terminated because it decided on its own that plaintiff had pre-existing arthritis.
We recognize that the trial court’s determination that the employer and insurer acted arbitrarily and capriciously in terminating compensation benefits will not be disturbed on appeal unless clearly wrong. Lupo v. State Division of Administration, supra. In this case the record shows that the trial court’s determination was clearly wrong. If the termination of benefits was based upon competent medical evidence the claimant is not entitled to attorney fees. Id. Likewise, attorney fees are not justified if a valid dispute exists regarding the cause of the disability. And penalties cannot be imposed if there was a reasonable ground for terminating payments such as a genuine dispute whether the claimant has recovered from the disabling injury even if the decision proves to be erroneous. Johnson v. Distribution and Transportation Company, 485 So.2d 589, 592 (La.App. 4th Cir.1986).
The reasons for judgment indicate that the trial court was unmindful of the reports the defendants had from Drs. Stokes and Murphy. These readily demonstrate that defendant’s did investigate plaintiff’s claim, they furnished defendants with a foundation for discontinuing payments and they set up a genuine dispute as to plaintiff’s disability. We have concluded that defendants acted reasonably by investigating plaintiff’s medical condition, in relying on the opinions of two medical experts in deciding to discontinue benefits, and by availing themselves of their right under the Constitution and laws of this state to have the courts decide whether they had any further obligation to plaintiff. Because this course of conduct was prudent and reasonable and was not arbitrary and capricious the imposition of penalties and attorney fees was unwarranted.
Accordingly, the judgment appealed from is affirmed, but amended to delete the penalty of twelve percent (12%) and the award of attorney fees.
AMENDED AND AFFIRMED.