594 So.2d 1008 (1992)
Wilfred J. ROMERO, Jr., Plaintiff-Appellant,
v.
GREY WOLF DRILLING COMPANY, et al., Defendants-Appellees.
No. 90-884.
Court of Appeal of Louisiana, Third Circuit.
February 12, 1992.
*1009 Miller & Miller, Michael B. Miller, Crowley, for plaintiff-appellant.
Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, John W. Penny, Jr., Lafayette, for defendants-appellees.
Before DOMENGEAUX, C.J., and STOKER and MARCANTEL[*], JJ.
STOKER, Judge.
In this opinion we consider two separate proceedings under the worker's compensation law although they involve the same claimant, Wilfred J. Romero, Jr., and the same defendants, Romero's employer and worker's compensation insurer. Both proceedings have origin in an on-the-job injury sustained by Wilfred J. Romero (Romero) on April 13, 1988, while he was employed by Grey Wolf Drilling Company. The first proceeding was a basic suit for compensation benefits and comes to us on appeal under our docket number 90-884. Although plaintiff Romero won in this proceeding, he was not satisfied with the trial court judgment and appealed.
Among the items of relief the trial court granted Romero in the first proceeding, the court ruled that Romero was entitled to rehabilitation services which had not been provided, and the court further ruled that "claimant is entitled to an evaluation of his employability by an independent vocational rehabilitation expert to be followed by a minimum of 26 weeks of rehabilitation." The defendants attempted to comply with this latter ruling, but Romero (through his attorney) rejected the services proffered by the defendants through Crawford & Company. Defendants then filed a rule to resolve the matter, and the trial court applied a sanction through reducing by one-half the compensation it had previously ordered to be paid to Romero as supplemental earnings benefits and ordering Romero to accept the services offered by Crawford & Company. Romero appealed this action, and it comes to us under our docket no. 90-1354.

APPEAL NUMBER 90-884
The first phase of the litigation before us, (Number 90-884), presents a purely factual question of the correctness of the trial court's resolution of the basic claim of worker's compensation benefits.[1] The trial court found that Romero was entitled to regular compensation of weekly payments of $225, (temporary total benefits) through April 20, 1989; and beginning April 21, 1989, Romero was entitled only to supplemental earnings benefits (SEB) of $135.65 per week for the period specified by law. In appeal number 90-884, Romero challenges the reduction from $225 to $135.65 and the refusal of the trial court to grant him a new trial on this issue. The issue on appeal, as specifically stated in Romero's brief, is "that the trial court committed manifest error in finding that the defendants had carried their burden of proof in showing that the telephone solication job [which the court focused on] was available and suitable for Mr. Romero."
Through urging that no work is available to Romero, his counsel urges that under the supplemental earnings benefits formula, LSA-R.S. 23:1221(3)(a), the wages he could earn after injury is zero. Using this zero factor in the formula would result in Romero being entitled to SEB in the amount of $225. In reality plaintiff is urging that his compensation should be maintained at his regular compensation rate of $225 for temporary total disability rather than being reduced through an award of SEB.
In response to plaintiff Romero's appeal in number 90-884, defendants urge "that the trial court was entirely correct in reducing Romero's compensation benefits from temporary total to SEB after April 20, 1989 and in denying Romero's motion for a new *1010 trial." The defendants urge that the judgment of the trial court on this phase of the litigation be affirmed.

TRIAL COURT'S REASONS FOR JUDGMENT
The trial judge assigned extremely well written reasons for judgment following trial of the first phase of the case. In order to set the stage for our consideration of his factual findings and rulings, we quote liberally from these reasons:

"REASONS FOR JUDGMENT
"Plaintiff, Wilfred J. Romero, filed suit against his former employer defendant, Grey Wolf Drilling Company (`Grey Wolf') and its worker's compensation carrier defendant, Cigna Insurance Company (`Cigna') for worker's compensation benefits, penalties, attorney fees and costs for vocational rehabilitation services.

* * *
"It is stipulated that the plaintiff injured his right elbow on April 13, 1988, while in the course and scope of his employment as a roustabout with Grey Wolf. On August 2, 1988, Dr. John Budden, an orthopaedic surgeon, operated on the plaintiff's right elbow by performing an excision of the radial head. After several months of physical therapy, Dr. Budden discharged the plaintiff on January 19, 1989, finding that the plaintiff had reached maximum cure. On final assessment, Dr. Budden concluded that the plaintiff sustained a ten percent (10%) permanent disability to his right upper extremity. This translated into a six percent (6%) disability of the plaintiff's entire person.
"Cigna began paying temporary total disability benefits to the plaintiff on May 2, 1988 at a rate of $187.65 per week. However, at the trial, the parties stipulated that the plaintiff should have been paid $225.00 per week. Cigna terminated the plaintiff's temporary total disability benefits on August 2, 1989. In accordance with La.R.S. 23:1226, Cigna provided vocational rehabilitation services to the plaintiff through Intracorp, a Cigna `sister' corporation, from November 21, 1988, until March 1, 1989, at which time the services were terminated.

* * *

"Compensation Benefits Owed to the Plaintiff
"The parties stipulated that the correct temporary total disability rate the plaintiff should have received as of April 14, 1988, was $225.00 per week rather than the $187.65 per week he actually received. The plaintiff contends that not only was he underpaid benefits but he is still temporarily totally disabled and therefore currently entitled to $225.00 per week in benefits. Alternatively, the plaintiff claims he was entitled to supplemental earnings benefits from April 19, 1989 until the present.

* * *
"La.R.S. 23:1221(1)1 provides:
`Temporary total. For injury producing temporary total disability of an employee to engage in any self-employment or gainful occupation for wages whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, or experience, sixty-six and two-thirds percent of wages during the period of such disability.'
"An employee seeking benefits under La. R.S. 23:1221(1) must prove by a preponderance of the evidence that he is temporarily totally disabled from engaging in any self-employment or gainful occupation for wages. Wokoma v. Hawk Pipe Service, Inc., 509 So.2d 665 (La.App. 3rd Cir.1987). Medical and lay testimony may be relied upon in establishing a temporary total disability. Bailey v. Zurich American Ins. Co., 503 So.2d 611 (La.App. 4th Cir.1987).
"By deposition, Dr. Budden stated that the plaintiff was officially discharged for light duty work on January 19, 1989. Restrictions on his right hand included no strenuous grasping, pushing, or fine manipulation and a maximum lifting of 20 pounds four to five times in an eight (8) hour period. However, Dr. Budden felt *1011 that even as early as November 21, 1988, the plaintiff was capable of performing light duty work, although he was unable to work as a roustabout. The only rebuttal evidence presented was the plaintiff's own testimony that he could not use his right wrist or lift objects weighing more than ten (10) pounds. On cross examination, he stated that he could perform `paperwork', answer telephones, sweep, and pick up trash. He can also drive a car, and during his weekend duty with the National Guard, he has picked up a ten (10) pound weapon.
"Rather than rebutting Dr. Budden, the plaintiff's testimony essentially corroborates Dr. Budden's conclusions. Although Dr. Budden officially discharged the plaintiff on January 19, 1989 and considered the plaintiff to be at maximum cure as early as November 21, 1988, Charles Thomas, the adjustor at Cigna who handled the plaintiff's claim, stated that he received Dr. Budden's release of the plaintiff on April 19, 1989. Based on the release by Dr. Budden, the Court finds that as of the date Cigna received Dr. Budden's release, April 19, 1989, the plaintiff was no longer entitled to temporary total disability benefits of $225.00 per week.

* * *
"The Court finds that the plaintiff was entitled to supplemental earnings benefits after April 19, 1989. La.R.S. 23:1221(3)(a) provides in part:
`(a) For injury resulting in the employee's inability to earn wages equal to ninety percent or more of wages at time of injury, supplemental earnings benefits equal to sixty-six and two-thirds percent of the difference between the average monthly wages at time of injury and average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter in any employment or self-employment ...'
"La.R.S. 23:1221(3)(c)(i) provides in pertinent part:
`.... [F]or purposes of Subparagraph (a) of this paragraph, if the employee is not engaged in any employment or self-employment,... the amount determined to be the wages the employee is able to earn in any month shall in no case be less than the sum the employee would have earned in any employment or self-employment,..., which he was physically able to perform, and (1) which he was offered or tendered by the employer or any other employer, or (2) which is proven available to the employee in the employee's or employer's community or reasonable geographic area.' (emphasis added)
"Paragraph 3(c)(ii) states:
`For purposes of Subsubparagraph (i) of this Subparagraph, if the employee establishes by clear and convincing evidence, unaided by any presumption of disability, that solely as a consequence of substantial pain, the employee cannot perform employment offered, tendered or otherwise proven to be available to him, the employee shall be deemed incapable of performing such employment.' (emphasis added)
"An employer may carry his burden of proving that there are jobs available to the employee as stated in La.R.S. 23:1221(3)(c)(i) by showing that jobs are generally available within the range of the employee's capacity. Kreider v. Schulin's Appliance Service, 524 So.2d 153 (La.App. 4th Cir.1988).
"Whether the plaintiff is entitled to supplemental earnings benefits depends on whether he is now able to earn wages equal to 90% of the wages he earned with Grey Wolf. Under La.R.S. 23:1221(3)(c)(i) the wages the plaintiff is able to earn must be determined by considering what the plaintiff is physically able to perform and those jobs offered or proven available to the plaintiff in either the plaintiff's or in Grey Wolf's community or reasonable geographic area.
"The Court has already concluded that, despite the plaintiff's allegations of pain, he is physically able to perform light duty work. Hence, the Court must determine whether suitable jobs have been tendered to the plaintiff or whether the defendants *1012 have proven that suitable jobs are available to the plaintiff in the area.
"There was no evidence presented that any employer has offered any kind of job to the plaintiff. However, the defendants did introduce evidence of three different light duty jobs in the Lafayette/Crowley area; namely three (3) cashier positions; a pizza delivery driver, and a telephone sales operator. Alan Durlacher, the vocational rehabilitative counselor with Intracorp, informed the plaintiff of these three positions between January and late February, 1989. All positions paid between $3.35 and $4.00 per hour and ranged from part-time to full-time work. Dr. Budden approved all three job descriptions as suitable for the plaintiff's limitations.
"The plaintiff stated that he applied for the three cashier positions on the same day he learned of them but they had already been filled. The plaintiff declined to apply for the other two positions because they did not interest him. On cross examination, Durlacher testified that he would not recommend that the plaintiff take the pizza delivery position in Lafayette since the plaintiff lived in Crowley and the gasoline consumption would likely use up any profit. He also stated that since the plaintiff was not interested in telephone sales, he probably would not do well in the job.
"After reviewing the evidence on this issue, the Court finds that the defendants presented the minimum level of proof to establish by a preponderance of the evidence that jobs suitable to the plaintiff's limitations were available in the area. Although the plaintiff proved that the cashier positions were not available, and the pizza deliverer was economically unfeasible, the telephone sales position was shown to be available and suitable to the plaintiff. Whether the plaintiff would like or dislike this job is irrelevant to the determination of this issue.
"The Court finds that the plaintiff is entitled to the following supplemental earnings benefits: Based on the amount the plaintiff earned at Grey Wolf, $1,451.25 per month ($337.50 × 4.3) less what he is capable of earning, $576.20 per month ($134.00 × 4.3), the Court finds that the plaintiff is earning less than 90% of his former wages and awards him supplemental earnings benefits of $135.65 per week, calculated as follows:
[(337.50 × 4.3)-(134.00 × 4.3)] × 66.66%=583.31/mo.=$135.65"
 ----------
 4.3
"1 As plaintiff's accident occurred on April 13, 1988, the law in effect at the time of the plaintiff's injury controls this case."

* * *

Trial Court's Trial Ruling As To SEB
In this appeal plaintiff strongly urges that the trial court erred in finding that the telephone solicitation job was actually available to him. After carefully considering the record, we do not find that the trial court was clearly wrong in making this finding under applicable standards of review. Under those well established standards we may not disturb the trial court's factual findings absent a finding of manifest error under the clearly wrong test. On the basis of the evidence before him at the conclusion of the trial, the trial court was fully justified in its conclusions.

Application For New Trial As To SEB
Following trial the plaintiff sought a new trial on the ground that through additional evidence he could prove that the telephone solicitation job was not in fact available because the company in question would not hire him. The trial in the first phase of the case was concluded on October 18, 1989, written reasons for judgment were handed down on November 20, 1989, and the formal judgment was signed on January 25, 1990. (See Appendix I). Plaintiff filed his motion for a new trial on February 2, 1990.
At the hearing on the motion for a new trial plaintiff attempted to adduce the testimony of Mrs. Linda George of Southern Siding, the company which had the telephone solicitation position which Mr. Durlacher testified was available. After the *1013 trial, Romero applied for the job. At the hearings on the motion for new trial, the trial court denied the new trial but allowed the testimony to be taken by proffer after the trial judge left the room. Mrs. George testified in the proffer that Romero was not approved for the job because she felt he was not properly motivated for the job and lacked the necessary writing skills because he wrote too slowly.
The testimony of Mrs. George was in the nature of rebuttal evidence. It purported to rebut the evidence given by Mr. Durlacher that the telephone solicitation job was in fact available. Defendants urge that on September 15, 1989, prior to trial, Romero's counsel took the deposition of Alan Durlacher and plaintiff's counsel became aware of the fact that Durlacher had contacted Mrs. George concerning the position in question.
Plaintiff Romero does not base his argument for a new trial on the fact that Mrs. George turned him down for the job in question. Rather, he bases his motion on the reasons she gave in turning him down which he contends shows he was not qualified for the job. Therefore, he contends that a new trial would show the job was in fact not available employment as contemplated by the worker's compensation law relative to SEB.
Had plaintiff applied to Mrs. George for the job with Southern Siding in advance of trial as a result of learning of the opening through Mr. Durlacher's deposition, and had he been turned down, evidence of that fact would no doubt have weighed heavily in the trial court's decision. In view of the theory, purpose and spirit of the worker's compensation law, there is certain merit to plaintiff's request for reopening the trial for the rebuttal evidence.
Defendant strenuously opposes reopening the case, urging that no peremptory grounds exist for a new trial under LSA-C.C.P. art. 1972. Defendant emphasizes that plaintiff could have applied for the telephone solicitation position with Southern Siding when he learned of the opening from Mr. Durlacher's deposition. This would have developed Mrs. Linda George's testimony in which she could have given her appraisal of plaintiff's qualifications relative to the telephone solicitation position. In support of their position, the defendants cite the cases of Brisco v. Board of Elementary & Second. Educ., 422 So.2d 667 (La.App. 3d Cir.1982), writ denied, 429 So.2d 154 (La.1983) and LeBlanc v. Consolidated Aluminum Co., 401 So.2d 1082 (La. App. 3d Cir.), writ denied, 409 So.2d 617 (La.1981). In any kind of action other than a worker's compensation proceeding, defendant's position would be meritorious, and denial of a new trial under the circumstances would be in order. However, in the context presented by this worker's compensation case, the issue is quite serious.
We have found no clear guidance, but we will analyze the cases we think afford some guidance. Our task here is to determine the meaning of that portion of LSA-R.S. 23:1221(3)(c)(i) which refers to employment "which is proven available to the employee in the employee's or employer's community or reasonable geographic region." The employer bears the burden of proving the availability of such employment. Captain v. Sonnier Timber Co., 503 So.2d 689 (La.App. 3d Cir.1987). In the reasons for judgment quoted above, the trial court relied on the case of Kreider v. Schulin's Appliance Service, Inc., 524 So.2d 153 (La.App. 4th Cir.1988) for the proposition that an employer may carry his burden of proving that there are jobs available to the employee within the meaning of the statutory provision by showing that jobs are generally available within the range of the employee's capacity. While Kreider does appear to stand for this proposition, the case is perhaps more important for recognizing that such proof may be rebutted by showing that "economic and other conditions" belie such availability.
Kreider distinguished the case of Batiste v. Hopeman Bros., Inc., 508 So.2d 922 (La.App. 4th Cir.), writ denied, 512 So.2d 1178 (La.1987). Batiste is reviewed in Ambrose v. Fluor Constructors, Inc., 537 So.2d 1176 (La.App. 4th Cir.1988). In Ambrose, the trial court held that Ambrose, an injured welder and pipe fitter, was *1014 entitled to supplemental earnings benefits, but the trial court refused to accept the testimony of a rehabilitation expert (Larry Stokes) as competent for the purpose of proving available work under LSA-R.S. 23:1221(3)(c)(i). Stokes had contacted a number of prospective employers and spoke to them about Ambrose's qualifications and physical limitations. On the basis of this search, Stokes testified that a number of possible jobs were open to Ambrose including jobs as a film developer, potato chip quality control inspector, electric motor repairer and cab driver.
The court of appeal in Ambrose reversed the trial court's ruling discussed above. After quoting the statute, LSA-R.S. 23:1221(3)(c)(i), the court concluded as follows:
"Supplemental earnings benefits are the measure of a certain percentage of the difference between the average monthly wages at the time of injury and the average monthly wages the employee is able to earn in any employment or self-employment. Defendants apparently contend that the plaintiff `is able to earn' whatever one of the jobs presented by Dr. Stokes pays, or in any case more than the minimum wage, the figure used by the trial court. The trial court felt that the burden of proof required by this provision required `that an employee actually be sent out on the job rather than a rehabilitation counselor coming to court and testifying in the abstract that certain jobs were located that would fit the physical limitations indicated by the various medical reports.'
"We disagree with the trial court's interpretation of the statute. This court has previously held that an employer may meet his burden of proving that there are jobs available to the employee as contemplated by La.R.S. 23:1221(3)(c)(i) by showing that jobs are generally available within the range of the employee's capacity. Kreider v. Schulin's Appliance Service, 524 So.2d 153 (La.App. 4th Cir.1988); Batiste v. Hopeman Brothers, Inc., 508 So.2d 922 (La.App. 4th Cir. 1987), writ denied, 512 So.2d 1178 (La. 1987).
"In Batiste a vocational rehabilitation expert evaluated the claimant, taking into account his physical limitations, education and training, and prior work experience. The expert also administered an academic evaluation and career assessment inventory. He concluded that the claimant would be suited for `desk work', jobs paying in the $4.50 to $6.00 per hour range. However, the expert was unable to point to a particular employer who could accept the claimant's application. He could only state that there were jobs in the market which the claimant was capable of performing. We found that defendants carried their burden of proving that there were jobs available to the claimant as stated in La.R.S. 23:1221(3)(c)(i). We further found that it was not necessary to conduct a job market survey to show that jobs were open for the claimant's application.
"In the case at bar Mr. Stokes fully evaluated the plaintiff as the expert in Batiste did. But Mr. Stokes went even further, contacting prospective employers to find out if they had openings available for a person with the plaintiff's skills, education, and physical limitations. Plaintiff was a resident of Vacherie, Louisiana. Some of the available jobs were in Houma, New Orleans, Reserve, Gramercy, Donaldsonville, and Baton Rouge. Based upon this evidence we feel the defendants met their burden of proving that employment was available to plaintiff in his community or reasonable geographic region as set forth in La.R.S. 23:1221(3)(c)(i)."
Batiste and Ambrose appear to stand for the proposition that job placement in fact is not a prerequisite to proving a job is available within the meaning of the statutory provision. If job placement in fact was a prerequisite, then LSA-R.S. 23:1221(3)(c)(i) would not be written as it is. That statutory provision refers to wages the employee would have earned in employment "which he was physically able to perform, and (1) which he was offered or tendered by the employer or any other employer, or (2) which is proven available to the employee *1015 in the employee's or employer's community or reasonable geographic area." If actual job placement was a requirement intended by the legislature, the second alternative would not have been included, and in all cases the test would have been whether or not employment had been "offered or tendered."
Accepting Batiste and Ambrose as correct holdings, they do not preclude rebuttal of expert testimony and the job availability which may be shown through such testimony. Kreider (decided by the same court of appeal which decided Batiste and Ambrose) found that the defendant's expert testimony failed to prove that employment was available to Kreider. At the behest of the defendants, their expert, Murrell, conducted a job search and located several jobs ranging from parking lot cashier to shuttle bus driver. Murrell notified counsel for Kreider of these jobs in advance of trial. Plaintiff's expert downplayed the possibility that Kreider could find employment.
In Kreider the court of appeal summarized and commented on Batiste as follows (Ambrose had not then been decided):
"In the present case, defendant's rehabilitation expert, Murrell, testified that there were jobs generally available in the area which Kreider was able to perform. However, this evidence, was rebutted by the expert testimony of Dr. Gorman who stated that due to economic and other conditions, there was only a two and one-half chance in ten that Kreider would find employment. Additionally, both experts agreed that Kreider should be counseled to obtain Social Security disability benefits in lieu of searching for employment. Under these circumstances, we conclude the trial court did not err in finding that Schulin and State Farm failed to prove that employment was available to Kreider.
"We are mindful that this court in Batiste v. Hopeman Brothers, Inc., 508 So.2d 922, (La.App. 4th Cir.1987) held that an employer may carry his burden of proving that there are jobs available to the employee as stated in R.S. 23:1221(3)(c)(i) by showing that jobs are generally available within the range of the employee's capacity. However, in this case, Dr. Gorman's testimony that Kreider had only a two and one-half chance in ten of securing employment demonstrated that employment was not reasonably available to him. To hold otherwise would unfairly deprive injured workers of needed benefits based on a `long shot' at substitute employment. This flies in the face of the policy behind our scheme of worker's compensation. Given the facts of this case, we agree with the trial court that Kreider was unable to earn any wages. R.S. 23:1221(3)(a)."
Against the jurisprudential background reviewed above, we conclude that Batiste and Ambrose are correct but that they are not inconsistent with Kreider. Our decision, therefore, is whether or not the plaintiff in the case before us, Wilford J. Romero, Jr., should be allowed to reopen (by way of a new trial) a closed worker's compensation case for the purpose of rebutting the evidence of the availability of the telephone solicitation position at Southern Siding as it may affect the determination of supplemental earnings benefits. We conclude that Romero should be given that relief. We deem it appropriate for the same reason that the worker's compensation law permits reopening a compensation case for the purpose of considering modification of a judgment previously handed down. LSA-R.S. 23:1331(C). See discussion in Malone and Johnson, Louisiana Civil Law Treatise, Vol. 13, Workers' Compensation and Practice, Second Edition, § 284 (1991 Pocket Part). Accordingly, we will remand the matter to the trial court with directions to hold a new trial restricted to the issue of availability of employment to Romero in connection with determining the amount of SEB to which he may be entitled.
In taking this action we do not prejudge the case. We express no opinion concerning the weight to be assigned to the opinion testimony which may be given by Linda George. We only direct that the trial court *1016 hear it and consider it in a new trial on the restricted issue noted above. Moreover, because the trial of this case took place on October 17 and 18, of 1989, over two years ago, and the motion for a new trial was heard and denied on March 26, 1990, over a year and a half ago, we deem it appropriate and fair that the restricted question at issue be reopened completely for any evidence which both sides may choose to adduce. In this connection, the trial court is directed to permit discovery relative to the plaintiff's health and work history from the date of the conclusions of the trial, October 18, 1989. Also, fairness should require that plaintiff submit to reasonable evaluation by experts for a redetermination of plaintiff's work capability, all within the sound discretion of the trial judge.
In plaintiff's brief he urges he should be awarded additional attorney fees for filing the motion for a new trial and for this appeal. The trial court awarded an attorney fee of $3500 for services rendered through the original trial as may be noted from the judgment of January 25, 1990, attached as Appendix I. The worker's compensation law provides that a claimant is entitled to reasonable attorney's fees for the prosecution of worker's compensation claims within sixty days of reasonable notice of the claim when the failure to pay the claim "is found to be arbitrary, capricious, or without probable cause." LSA-R.S. 23:1201.2. The statutory provision can hardly be said to be applicable to a proceeding for a new trial. Moreover, we cannot find that the defendants were arbitrary, capricious or unreasonable under the circumstances relating to plaintiff's efforts to obtain a new trial. Plaintiff is not entitled to an attorney fee for services rendered in seeking a new trial in the trial court or in this appeal.
At oral argument counsel suggested that plaintiff should be awarded damages for frivolous appeal. Under LSA-C.C.P. art. 2164 an appellate court may award damages for frivolous appeal. When plaintiff filed his appeal in number 90-884, the defendants answered the appeal and assigned as error several rulings of the trial court in its judgment rendered on January 25, 1990, in the first phase of the case. We do not consider the request made at oral argument for the award of frivolous appeal damages for two reasons. First, we do not find that plaintiff filed an answer to defendant's appeal (asserted in its answer to plaintiff's appeal) praying for such damages as required by LSA-C.C.P. art. 2133. Cf. Hornsby & Landry v. Hornsby, 559 So.2d 863 (La.App. 3d Cir.), writ denied 563 So.2d 866 (La.1990). Second, it appears that defendants abandoned their appeal. They did not brief the assignments of error listed in their answer to plaintiff's appeal.

APPEAL NUMBER 90-1354
In the trial of the first phase of this case the defendants attempted to show that they had furnished rehabilitation services as provided and required by LSA-R.S. 23:1226. The defendants provided the alleged rehabilitation services through Intracorp which is a sister company of Cigna Insurance Company, the worker's compensation insurer of the defendant, Grey Wolf Drilling Company. The trial court found that the purported services did not qualify as rehabilitation services required by the statute, and in its reasons for judgment, it found "that plaintiff is entitled to an evaluation of his employability by an independent vocational rehabilitation expert (not affiliated with Cigna), to be followed by a minimum period of twenty-six weeks of rehabilitation." The trial court incorporated this ruling in its judgment of January 25, 1990.
In compliance with this ruling, the defendants contacted Crawford & Company Health & Rehabilitation (Crawford) and made arrangements for Crawford to furnish rehabilitation services to plaintiff. Crawford assigned plaintiff's case to Eileen Figuroa, head of Crawford's vocational rehabilitation department. Figuroa was a licensed rehabilitation consultant. Figuora attempted on numerous occasions to schedule appointments with plaintiff through his attorney. Plaintiff, through his attorney, resisted all efforts of Eileen Figuroa to schedule appointments for evaluations in *1017 order to determine the appropriate rehabilitation services Crawford would offer.
Faced with the obduracy of plaintiff's counsel, the defendants filed a rule on May 24, 1990, to require plaintiff to show cause why his weekly compensation benefits should not be reduced by 50% because of his refusal to accept the offered rehabilitation services as authorized by LSA-R.S. 23:1226(E). This statute at the applicable time provided in part: "Refusal to accept rehabilitation as deemed necessary by the director or the court shall result in a fifty percent reduction in weekly compensation, including supplemental benefits pursuant to R.S. 23:1221(3), for each week of the period of refusal." On the trial of the rule on July 2, 1990, the trial court found for defendants and reduced Romero's weekly compensation benefits by 50% commencing May 14, 1990, the reduction to continue thereafter for each week he refused to cooperate. Romero appealed the judgment effecting this holding, and that appeal, docketed in this court as number 90-1354, is consolidated with appeal number 90-884.
We find no merit to plaintiff's appeal in number 90-1354 and affirm the trial court's reduction of benefits. The record disclosed calculated obfuscation by Romero's attorney concerning the attempt of Crawford to provide rehabilitation services. In essence, Romero's attorney takes the position that he should be in charge of the process of providing rehabilitation and should have authority to monitor, if not countermand, all efforts of Crawford to furnish the court ordered services. Romero's attorney appears to feel that he should have the right to veto the assignment of any person to conduct the evaluation of Romero or the services to be provided. In fact, in Romero's brief to this court plaintiff's attorney makes it quite clear that he is of the opinion that, not only should he be in control of the furnishing of rehabilitation services, he should be allowed to dictate who will furnish the services and the nature of the services.
The basic position taken by Romero through his counsel is twofold: (1) Romero "never refused to undergo rehabilitation, but only objected to having the rehabilitation provided by Crawford and Company" (page nine of Romero's original brief filed January 10, 1991, in docket number 90-884) and (2) since "the trial court did not specifically indicate who had the choice [of who should provide the rehabilitation], it is submitted that the choice should have been with Mr. Romero." (Page ten of the brief cited immediately above.)
In addition to the twofold position set forth above, plaintiff's counsel takes the alternative position that plaintiff should not be required to accept Crawford Rehabilitation Services of Crawford and Company since they were selected by defendants' insurer, Cigna, without the right to test the qualifications of the provider. In the brief referred to above counsel asserts:
"In addition to the issue of who was to select the rehabilitation expert, it is also important as to what were the qualifications of the person providing these benefits. Under no circumstances should CIGNA be given the absolute right to select any person it chose to provide rehabilitation services to Mr. Romero and that Mr. Romero would be forced to accept these benefits without having an opportunity to have a hearing to check the qualifications of the person providing the benefits. This is true whether Mr. Romero was right or wrong. There can be no reduction in benefits prior to a court ruling that Mr. Romero was not adhering to a recommended rehabilitation program, Washington v. Dan Kelly Warehouse, 499 So.2d 1167 (5th Cir. 1986). The transcript in this case shows that although the order of this Court in its original judgment ordered twenty six weeks of rehabilitation, the adjuster refused to concede that he would be placed in a retraining program. Because of the actions of Ms. Figuroa, Mr. Romero declined her services as he felt her actions were not in his best interest. It is submitted that his interpretation was correct. Even if it was not, he had a right to litigate the issue of whether or not she was qualified and would provide the services ordered by the Court, prior to accepting the services."
*1018 For the sake of clarity we will first address plaintiff's alternative contention. No one would gainsay plaintiff's right to test the qualifications of Crawford and Company, or Ms. Figuroa in particular, if the matter were brought to court for adjudication. Washington v. Dan Kelly Warehouse, Inc., supra, did not hold that a worker's compensation claimant could refuse, or question, rehabilitation offered by an employer or insurer. The court of appeal in Washington specifically said that "the issue is not whether the employee was justified in refusing rehabilitation but rather whether the employer or his insurer can unilaterally assess the penalty provided under LSA-R.S. 23:1226 without first obtaining a judicially reviewable ruling from the Department as to whether there was a refusal to accept rehabilitation and the period of time such refusal occurred." The court of appeal held the insurer in fact could not act unilaterally. Clearly, Washington is of no comfort to Romero.
We now address plaintiff's two basic positions stated above. The first argument, that he never refused to undergo rehabilitation services, is specious. The record clearly shows plaintiff's attorney resisted every effort by Ms. Figuroa to make an approach to rehabilitation. The attorney refused to let Ms. Figuroa even interview his client on the thin ground that before she ever started he was entitled to know exactly what she proposed. He would not even allow Mr. Romero to be evaluated. Federated Rural Elec. v. Simmons, 568 So.2d 644, 649 (La.App. 3d Cir.), writ denied, 571 So.2d 655 (La.1990) held that although there is presently no accepted standard for rehabilitation service as provided by LSA-R.S. 23:1226, "at the very least it must begin with testing and evaluation" and "[i]t certainly involves counseling as well." The court further held that the service must be appropriate for the claimant. Obviously, a rehabilitation service cannot determine what is appropriate for a client if it is not allowed to test and evaluate the client.
Regarding plaintiff's second basic argument, his contention that the choice of rehabilitation services is his, we find no authority for this contention and plaintiff points us to none. We start by noting that the trial court ordered the defendants to provide the services. To provide them meant that defendants were required to pay for them. The defendants acted in good faith and engaged the services of Crawford and Company, an independent agency. Plaintiff has not shown that this company, or its representative, Ms. Figuroa, lack the competency to provide proper rehabilitation services. Plaintiff did not challenge the competency of Crawford and Company in court.
Plaintiff's real reason for insisting that he has the right to choose what rehabilitation services will be rendered to him and who shall do it has been quite candidly disclosed by his attorney. Plaintiff wants to be trained in a speciality he has chosen and has chosen the individual he wants to train him.[2] After hearing the evidence on defendants' rule, the trial court stated as part of its findings:
"The Court will find that a referral was made by the defendant on April 9th, 1990 to Crawford Health & Rehabilitation Company, to make an evaluation of the plaintiff in order to comply with the Court's Judgment.
The Court finds that there has been no proof whatsoever that Crawford Health & Rehabilitation Company has any connection with the defendants and, further, *1019 that they are not qualified to perform the services ordered by the Court.
The Court further finds that the plaintiff, through his attorney Mr. Miller, has refused on six occasions without cause to allow the plaintiff to be evaluated by Crawford Health & Rehabilitation Company, and that his refusal in the Court's opinion was arbitrary and had no legal basis whatsoever."
We find no manifest error in these findings of the trial court and no abuse of discretion in the reduction of plaintiff's SEB by one-half. Accordingly we affirm the trial court in this regard.
Our affirmance of the trial court's reduction of supplemental earnings benefits will not be invalidated by any ruling which the trial court may ultimately make after a new trial on the issue involved in appeal number 90-884. Should the trial court rule in favor of Romero in the new trial, the amount of SEB will simply be established at $225 instead of $135.65. In that circumstance, the trial court's reduction should apply to the higher figure of $225 with appropriate credit as may be required.
Although the appeals in the two phases of this case were consolidated in this court, we render a separate judgment in appeal number 90-1354.

CONCLUSION
For the reasons given above, we affirm the judgment of the trial court in appeal number 90-884 dated January 25, 1990. We reverse the judgment of the trial court dated April 2, 1990, which denied plaintiff Wilfred J. Romero, Jr. a new trial and remand the case to the trial court for a new trial restricted to reconsideration of the amount of supplemental benefits plaintiff may be entitled to under LSA-R.S. 23:1221(3)(c)(i) and consistent with the expressions contained in this opinion. Attorney's fees sought by plaintiff in appeal number 90-884 are denied.
The costs of the two consolidated appeals dealt with in this opinion are assessed one-half to plaintiff, Wilfred J. Romero, Jr. and one-half to defendants, Grey Wolf Drilling Company and Cigna Insurance Company.
AFFIRMED AS TO JUDGMENT RENDERED FOLLOWING TRIAL; REVERSED AS TO THE DENIAL OF A NEW TRIAL AND REMANDED.

APPENDIX 1

Wilfred J. Romero

Versus

Grey Wolf Drilling Co., et al.

15th Judicial District Court

Docket Number: 61,798-J

Parish of Acadia

State of Louisiana

JUDGMENT
This matter came to be heard after being duly fixed on October 17th and 18th, 1989:
PRESENT: MICHAEL B. MILLER, attorney for WILFRED J. ROMERO, and
JOHN W. PENNY, JR., attorney for GREY WOLF DRILLING COMPANY and CIGNA INSURANCE COMPANY,
when, after hearing the evidence, stipulations and argument of counsel:
IT IS ORDERED, ADJUDGED AND DECREED that WILFRED J. ROMERO is entitled to total temporary benefits from April 13, 1988 through April 20, 1989 at the rate of $225.00 per week; that WILFRED J. ROMERO is entitled to supplemental earnings benefits in the amount of $135.65 beginning April 21, 1989 until further orders of this Court.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that defendants are arbitrary and capricious in failing to pay weekly compensation benefits for the week of April 14th through April 20th, 1988; in failing to pay weekly compensation benefits in a proper amount from April 21, 1988 until April 20, 1989; and in terminating weekly compensation benefits from August 3, 1989 until paid and as a result of the conduct of defendants, WILFRED J. ROMERO is entitled to past due compensation as follows:

*1020 (a) April 14th through April 20th, 1988 in the amount of $225.00, plus a 12% penalty in the amount of $27.00;
(b) Underpayment of weekly compensation from April 21, 1988 until April 20, 1989 in the amount of $1,942.20, plus a 12% penalty in the amount of $233.06; and
(c) Supplemental earnings benefits from August 3, 1989 in the amount of $135.65 per week until such benefits terminate as per La.R.S. 23:1221(3)(d), plus a 12% penalty on the amount owed from September 11, 1989 until the date of payment.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the supplemental earnings benefits awarded in subsection (c) of the preceding paragraph is subject to a credit in favor of defendants for overpayment of $52.00 per week for the period of April 19th to August 2, 1989, or a total credit of $780.00.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the court finds that plaintiff has not been provided rehabilitation services in accordance with La.R.S. 23:1226 and accordingly, claimant is entitled to an evaluation of his employability by an independent vocational rehabilitation expert to be followed by a minimum period of 26 weeks of rehabilitation.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that defendants are cast with all costs of these proceedings, including court reporter fees and the following expert witness fees:

(a) Alan Durlacher $200.00
(b) Deposition of Dr. Budden $150.00
(c) Deposition of Dr. McNeely $ 75.00

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that defendants owe legal interest thereon from the date plaintiff's payments were due plus reasonable attorneys fees in the amount of $3,500.00.
Crowley, Acadia Parish, Louisiana, this 25th day of January, 1990.
 /s/Don Aaron, Jr.
 DISTRICT JUDGE
NOTES
[*] Honorable Bernard N. Marcantel participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[1] The trial court's judgment in the first phase of this case disposed of a number of technical issues not involved in this appeal. We will not burden this opinion with the details not essential to our appellate consideration, but we attach to this opinion a copy of the opinion identified as Appendix I.
[2] Plaintiff desires to be trained in electronics by Glen Hebert. In his reasons for judgment the trial court adverted to plaintiff's desire. In holding that the rehabilitation which Cigna purported to give through Alan Durlacher, the trial court stated: "In fact, the plaintiff has been provided almost no counseling [,] much less appropriate training and education so as to pursue gainful employment. Despite Durlacher's conclusion, the plaintiff has been accepted into an electronics training program and he deserves the opportunity to pursue this field." (Emphasis added.) The trial court then stated that plaintiff was entitled to an evaluation by a rehabilitation expert not affiliated with Cigna. Had plaintiff been permitted by his counsel to cooperate with Crawford and Company, that agency might well have recommended that plaintiff be trained in electronics.